**No. 06-0224**
(Judge Eric G. Bruggink)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

JOHN HERDA, *et al.*,

PLAINTIFFS

VS.

UNITED STATES OF AMERICA,

DEFENDANT

---

# PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

THOMAS E. REDDING, Lead Attorney
SALLIE W. GLADNEY
TERESA J. WOMACK
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
Telephone: (713) 965-9244
Telecopier: (713) 621-5227
Attorneys for Plaintiffs

Pursuant to RCFC 56, Plaintiffs John J. Herda, Susan M. Herda, Nicholas Herda, and Jodi Lynn Herda (together "the Herdas") move for summary judgment because the Internal Revenue Service ("IRS") improperly denied their 1990 refund claims.[1]

The Herdas believe that the uncontested facts and established legal precedent support summary judgment in their favor. But if the Court does not agree, then it must address the following fact intensive issues:

- Determination of the plaintiffs' basis in their partnership interests,
- Whether the partnership interests became worthless or were abandoned or the partnerships terminated in 1990,
- Whether the loss is allowable as a capital or ordinary loss, and
- Any other grounds for recovery in the complaint not addressed in this motion.

## STATEMENT OF QUESTIONS INVOLVED

Whether the Herdas are entitled to a refund for 1990 because they incurred a tax loss when their partnership interests became worthless, their interests were effectively abandoned or the partnerships terminated in 1990, and whether the loss should be allowed as a capital or an ordinary loss.

## STATEMENT OF THE CASE AND SUMMARY OF THE ARGUMENT

John J. Herda and his brother Nicholas Herda invested in the same two partnerships in 1981 and 1982 and claimed related losses on their tax returns for 1981 through 1985. The IRS challenged the losses at both the partner-level and partnership-level, as appropriate. In 1987, 1988, and 1989, Tax Court cases were filed for all relevant tax years (1981-1985). From 1986 through 1990, the Herdas reported no losses or income from the partnerships on their tax returns. The Herdas believe the partnerships terminated in 1990, which was the last year for which they received any K-1s. As a result

[1] Plaintiffs John and Margaret Herda are not part of this motion. Plaintiffs anticipate that a separate motion will be filed shortly to dismiss John and Margaret Herda from this proceeding.

of the IRS's determinations regarding these partnerships, it was clear that the partnership interests had become worthless and the brothers abandoned any interest in the partnerships. The tax law allows a taxpayer to deduct a loss for his tax basis in a partnership when his interest becomes worthless, is abandoned, or the partnership terminates. That loss is allowable as an ordinary loss if the partner receives nothing in exchange for his interest. But, due to the ongoing Tax Court litigation, in 1990 the Herdas had no way to compute the amount of their loss. In 2001 the Herdas and the IRS settled all of the Herdas' partnership related issues before the Tax Court agreeing that all of the claimed losses from 1981 through 1985 were disallowed. Pursuant to the TEFRA[2] provisions the Herdas then filed claims for tax year 1990 for refunds based on their basis losses. The IRS failed to allow their claims and they filed this suit to recover based on their 1990 refund claims.

The brothers each invested $37,500 in each of the partnerships, recognized no losses or income from either partnership and still had a tax basis of $37,500 in each of their partnerships in 1990. The Herdas should be allowed deductions for their losses claimed and their refund claimed should be paid.

## ARGUMENT

John J. Herda and Nicholas Herda each invested in two partnerships. Their initial investments in Crowne Oil Technology Partners ("Crowne Oil") were in 1981. [PEx:5; 27; 28; 39; 47][3] Their initial investments in Dillon Oil Technology Partners ("Dillon Oil") were in 1982. [PEx:5; 27; 28; 39; 47] With regard to each partnership, John J. Herda and Nicholas Herda each made cash capital contributions of $37,500, which was paid $12,500 with the initial subscription agreement and two

---

2 Partnership procedures codified at 26 U.S.C. §§6221-6233, as enacted by the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97-248, 96 Stat. 324 ("TEFRA"), and as thereafter amended.

3 References to [PEx:"X" p. "Y"] are to Plaintiffs' Exhibit "X" at Bates stamped page "Y" attached to the Plaintiffs' Proposed Findings of Uncontroverted Fact with Respect to Their Motion for Summary Judgment.

subsequent installments in the two succeeding years of $12,500 each. [PEx:21-30; 47] These partnerships were among numerous "Elektra Hemisphere" partnerships involving over 2,000 investors. *Krause v. Commissioner*, 99 T.C. 132, 133 (1992). The Internal Revenue Service ("IRS") challenged the deductions claimed by each of the partnerships and consequently the deductions claimed by the partners. [PEx:1-4; 38] For 1981 and 1982 statutory notices of deficiency were issued to the partners, including John J. and Susan M. Herda and Nicholas Herda. [PEx:1; 37-38] They filed petitions in the United States Tax Court with regard to the 1981 and 1982 tax years which were ultimately settled by agreed decisions being entered in those cases and all related deductions regarding the partnerships were disallowed. [PEx:5; 39] For tax years 1983 through 1985, the partnerships were subject to the TEFRA audit and deficiency procedures and Notices of Final Partnership Administrative Adjustment ("FPAAs") were issued at the partnership level. [PEx:2-4] Petitions with regard to those years were filed at the partnership level in the United States Tax Court. [PEx:2-4] With regard to 1983, 1984, and 1985, John J. and Susan M. Herda and Nicholas Herda eventually entered into settlement agreements with the IRS pursuant to which the deductions they had claimed with regard to the partnerships were all disallowed. [PEx:6-11; 40-45] For tax years 1986 through 1990, none of the plaintiffs claimed any income gain, loss or deduction related to the partnerships on their tax returns. [PEx:15-19; 31-35] Therefore, with regard to each of these partnerships, John J. Herda and Nicholas Herda each had a tax basis of $37,500 in their investment in each of the partnerships as of 1990.

In the Tax Court litigation, a pre-TEFRA partner-level test case and a TEFRA partnership-level test case were selected relative to the over 2000 partners in the Elektra Hemisphere partnerships and eventually tried together. That combined case was *Krause*.[4] The Herdas were not parties to *Krause*

[4] Mr. Krause was the tax matters partner for Barton Enhanced Oil Production Income Fund, one of the Elektra Hemisphere partnerships, for tax years 1982 and 1983. *Krause* at 133.

but the Tax Court's general finding with regard to the intent and motivation of the individual taxpayers who invested in the Elektra Hemsphere partnerships is important. In that regard in evaluating whether or not penalties should be applied, the Tax Court entered the following ruling:

> With regard to our analysis of the additions to tax in this case, it is important to note that one of respondent's own expert witnesses acknowledges that investors may have been significantly and reasonably influenced by the energy price hysteria that existed in the late 1970s and early 1980s to invest in EOR technology. We have noted in our findings of fact a number of industry and governmental reports and publications that encouraged investors to invest in EOR technology. Various governmental incentives, funding, and subsidies were directed at development of EOR technology. In the early 1980s, a large amount of money was spent on the development of technology for the recovery of oil from shale and synthetic fuels in spite of the fact that such technology was not technically viable at the time and that minimal oil was produced therefrom.
>
> In evaluating the imposition of the additions to tax in this case, and in light of the above facts (encouraging investments in and the development of tertiary oil recovery methods such as EOR technology), we are somewhat understanding of the individual investments that were made in the Manhattan and Wichita partnerships. In the context of the hysteria relating to the energy crisis, the oil price increases of the late 1970s, the industry and governmental interest in EOR technology, the heavy and sophisticated promotion of these investments, and the evidence in these cases (and in spite of our findings and conclusions sustaining respondent's substantive tax adjustments), we conclude that petitioners are not liable for the additions to tax and the additional interest element for negligence under sections 6653(a), 6653(a)(1) and (2).
>
> *Krause* at 177-178.

Similarly, the *Krause* court found the IRS failure to waive any substantial understatement or overvaluation pemalties an abuse of discretion by the IRS. *Krause* at 179.

In short, although the Tax Court disallowed the deductions to the partnerships, it found that the investors' actions of investing in the partnerships were understandable and not negligent.

It is well established that a taxpayer may recognize a tax loss upon the abandonment, worthlessness, or termination of a partnership interest to the extent of his basis in the partnership interest. *Echols v. Commissioner*, 93 F.2d 703 (1991); Rev. Rul. 93-80, 1993-2 C.B. 239.

The worthlessness, termination or abandonment of investment property is a taxable disposition

resulting in a loss equal to the owner's basis at the time of the event. *Id.* Simply stated it is different from a sale or exchange because you receive nothing in return. If the property is not encumbered with liabilities, the loss realized is an **ordinary** loss rather than a capital loss **even if the asset is a capital asset** in the taxpayer's hands. *Id*. This is because for a loss to be treated as a capital loss, there must be a "sale or exchange" of a capital asset or a statutory exception to this rule. §1211.[5] An abandonment, worthlessness or termination of a partnership interest is not a sale or exchange, at least in the absence of the taxpayer being relieved of liabilities in connection with the abandonment. See, *e.g*., Rev. Rul. 57-503, 1957-2 C.B. 139.

This result applies even in the case of an intangible asset such as a partnership interest. *Echols*; Rev. Rul. 93-80. However, if the partnership has liabilities that were taken into account by the partner in determining the tax basis for his partnership interest, the disposition might be treated as a "sale or exchange" resulting in a capital rather than an ordinary loss, if the partner is relieved of the liability as a result of the event. Rev. Rul. 93-80. Therefore, the primary tax issue relating to a disposition or worthlessness of a partnership interest is not whether a deduction for the loss is available, but whether the loss is ordinary or capital in nature. In short, the worthlessness, termination or abandonment of a partnership interest results in an ordinary loss equal to the partner's basis in the interest at the time of the abandonment, provided that the partnership has no liabilities in which the subject partner shared.

The courts initially came to this conclusion under the 1939 Code, prior to the massive amendments in the 1954 Code that included the adoption of a special subchapter related to partnership taxation (subchapter K). The lead cases, *Gannon v. Commissioner*, 16 T.C. 1134 (1951), acq., 1951-2 C.B. 2, and *Hutcheson v. Commissioner*, 17 T.C. 14 (1951), both involved the withdrawal of a partner

---

[5] Unless otherwise indicated all references to section, §, IRC, and the Code are to the Internal Revenue Code at 26 U.S.C.

from a partnership (not an abandonment) pursuant to which the withdrawing partner received nothing in consideration for his interest. *Gannon* at 1137; *Hutcheson* at 18. The Tax Court held in both cases that the withdrawing partner was entitled to an ordinary loss. *Gannon* at 1139; *Hutcheson* at 18.

Cases subsequently decided under the newer 1954 Code reached the same conclusion. (Nothing in the 1986 Code or subsequent amendments should change the result from the 1954 Code.) In the lead case in this area, *Echols v. Commissioner*, 935 F.2d 703 (5th Cir. 1991), the Fifth Circuit, reversing the Tax Court, held that a partner was entitled to a loss upon his abandonment or worthlessness of a partnership interest. *Echols* at 709. In *Citron v. Commissioner*, 97 T.C. 200 (1991), the Tax Court also concluded that a partner is entitled to an ordinary loss upon an abandonment of his partnership interest. *Citron* at 217. In *Citron*, ordinary loss treatment was predicated on the partnership having no liabilities. Thus, in the absence of partnership liabilities, any loss realized on an abandonment of a partnership interest should be characterized as an ordinary loss. No sale or exchange, which is required for capital loss treatment, occurs upon abandonment, unless the partner is relieved of liabilities, and nothing within the Internal Revenue Code re-characterizes the loss from ordinary to capital.

The Herdas assert no part of their basis computation based on partnership indebtedness.

In *Echols*, at 707, the Fifth Circuit also clearly articulated the rule that a test for worthlessness is partly objective, but the timing of the loss is subjective.

> More precisely, the test for worthlessness is a mixed question of objective and subjective indicia. Admittedly, a property cannot be treated as worthless for tax loss purposes if at the time it, objectively, has substantial value. But the more important question of *when* a property is worthless for purposes of a loss deduction under I.R.C. §165(a) is, like beauty, largely in the eyes (more accurately, the mind) of the beholder (more accurately, the holder). The instant case is a good example.

After *Echols* and *Citron*, the IRS issued Rev. Rul. 93-80, 1993-2 C.B. 239, which is still in effect and ruled that a loss incurred on the abandonment or worthlessness of a partnership interest is an ordinary loss if sale or exchange treatment does not apply. (This ruling revoked Rev. Rul. 76-189,

1976-1 C.B. 181, in which the IRS had concluded that a termination of a partnership resulted in a constructive sale of partnership interests resulting in capital loss under Code §§731 and 741, even though the partnership had no assets or liabilities at the time of the termination.) Rev. Rul. 93-80 also clarified and superseded Rev. Rul. 70-355, 1970-2 C.B. 51, in which the IRS ruled that the taxpayer's loss was ordinary but did not discuss the relevance of partnership liabilities. Under Rev. Rul. 93-80, sale or exchange treatment applies only if a taxpayer is relieved of any liabilities by virtue of the abandonment of a partnership interest. In such cases, the loss is treated as a capital loss. There was no relief from any liability for the Herdas.

As summarized in Rev.Rul. 93-80:

> HOLDING
>
> A loss incurred on the abandonment or worthlessness of a partnership interest is an ordinary loss if sale or exchange treatment does not apply. If there is an actual or deemed distribution to the partner, or if the transaction is otherwise in substance a sale or exchange, the partner's loss is capital (except as provided in Section 751(b)).

If a partnership has liabilities that were taken into account in calculating a partner's basis and the partner is relieved of those liabilities by the abandonment, a loss from abandonment of the partner's interest is capital in nature. This result follows because the Internal Revenue Code *treats* such a transaction as a *constructive* sale or exchange. (That is, whether or not there is a real sale or exchange, the law treats the event as if it were a sale or exchange.) Under §752(a), a partner is deemed to have contributed cash to a partnership to the extent of any increase in his proportionate share of partnership liabilities or upon the assumption by the partner of partnership liabilities. A decrease in a partner's share of partnership liabilities or the assumption by the partnership of a partner's liabilities is treated as if it were a distribution of cash from the partnership to the partner under §752(b). Consequently, if a partner withdraws from (or abandons) a partnership that has liabilities, ***and*** his share of partnership liabilities is thereby reduced but without the partner's receiving any other consideration for the

withdrawal, a distribution of cash to the partner in consideration for his partnership interest will be deemed to occur as a result of the reduction in the partner's share of liabilities. A constructive sale or exchange of his partnership interest will, therefore, occur under §731; and, under §741, the loss on the constructive sale or exchange will be characterized as a capital loss. However, in this case, no portion of the Herdas' basis was based on partnership debt.

It is apparent from the records in this case that John J. Herda and Nicholas Herda's interest in their partnership investments were valueless. The factual determinations in *Krause* support that determination, and the Herdas' recognition of that loss in 1990 is subjectively reasonable as evidenced by their not having claimed the 1990 K-1 losses. It also appears that because the last K-1 received from either of these partnerships by the plaintiffs was April 19, 1990, that in reality the partnerships terminated in that year. Although John J. Herda and Nicholas Herda both included copies of substitutes Schedules K-1 received from their partnerships with his 1990 tax return, they did not claim the losses reported on their tax returns thereby reflecting their knowledge that these partnerships were being challenged by the IRS and that there was no longer a reasonable expectation that they would either be productive or otherwise having any remaining value. [PEx:19, 35]

As a final settlement had not been reached with regard to what if any deductions would be allowed with regard to the partnerships or when, it would have been inappropriate to claim a deduction on the 1990 tax returns, because it would have been impossible at that time to compute what the remaining tax basis would be, if any. Many tax shelters had been settled in the past allowing a deduction for all or part of the cash investment in the first year of the investment. It did not ultimately turn out to be the case with regard to the Elektra Hemisphere partnerships, but nothing related to those partnerships should preclude recognizing the appropriate tax loss upon the worthlessness, termination, or abandonment of that partnership interest.

The best evidence available to the Herdas is that 1990 constitutes the appropriate year in which they recognized that the partnerships had no further value, the year for which they received the last K-1 they ever received from the partnerships, and their personal intent to walk away from and disregard the K-1s received regarding their interests in these partnerships.

## CONCLUSION

John J. Herda and Nicholas Herda each invested in two partnerships that became worthless and were either terminated or abandoned in 1990. Their ending tax basis in each partnership interest was $37,500. Under Rev.Rul. 93-80 and *Echols*, it is clear they should be allowed to recognize their losses on the investments as ordinary losses in 1990 and are entitled to the refunds claimed.

For all the reasons stated, the Herdas' refund claims should be granted and the Herdas should be allowed to recognize an ordinary tax loss for their basis in their partnership investments for 1990.

WHEREFORE, the Herdas request summary judgment granting their refund claims in the amount of $23,945.00 for John J. and Susan M. Herda and $22,700.00 for Nicholas and Jodi Lynn Herda

Respectfully submitted,

July 20, 2007

/s/ Thomas E. Redding

Thomas E. Redding, Attorney of Record
Sallie W. Gladney
Teresa J. Womack
REDDING & ASSOCIATES, P.C.
2914 West T.C. Jester
Houston, Texas 77018
(713) 965-9244
(713) 621-5227 Fax
Attorneys for Plaintiffs