UNITED STATES TAX COURT

U.S. TAX COURT
RECEIVED
'88 AUG 31 A8:06
'88 AUG 31 A11:42

GEORGE R. BUTZ;
ANN C. DRESSER;
JOHN J. HERDA and
SUSAN M. HERDA;
JOHN HERDA and
MARGARET HERDA;
BARBARA L. KLEIN;

Petitioners,

vs.

COMMISSIONER OF INTERNAL
REVENUE SERVICE,

Respondent.

DOCKET NO. 22573-88

ELEKTRA/HEMISPHERE
ASSIGNED TO JUDGE
STEPHEN SWIFT

MAIL CLERK
ADMISSIONS
RECORDED & SERVED
PUB. FILES

**PETITION**

The Petitioners hereby petition for a redetermination of the deficiencies set forth by the Commissioner of Internal Revenue in his Notices of Deficiency, copies of which are attached hereto and as the basis for their case allege as follows:

1. The joint Petitioners are:

| NAME AND ADDRESS | SOCIAL SECURITY NO. | PLACE FILED |
|---|---|---|
| George R. Butz<br>628 Corona Street<br>Denver, Colorado 80218 | [redacted] | Denver, CO |
| Ann C. Dresser<br>4530 South Verbena #310<br>Denver, Colorado 80237 | [redacted] | Denver, CO |
| John J. Herda and<br>Susan M. Herda<br>9680 Sultana<br>Las Vegas, NV 89118 | [redacted] | Ogden, UT |
| John Herda and<br>Margaret Herda<br>9670 Sultana<br>Las Vegas, NV 89118 | [redacted] | Ogden, UT |

PLAINTIFF'S EXHIBIT 1



SERVED AUG 31 1988

| | | |
|---|---|---|
| Barbara L. Klein<br>2600 Ashby<br>Las Vegas, NV 89102 | [redacted] | Ogden,<br>UT |

2. The respective Notices of Deficiency were mailed as follows:

| NAME | DATE MAILED | FROM |
|---|---|---|
| George R. Butz | June 29, 1988 | Denver, Colorado |
| Ann C. Dresser | June 29, 1988 | Denver, Colorado |
| John J. Herda and Susan M. Herda | June 9, 1988 | San Francisco, CA |
| John Herda and Margaret Herda | June 9, 1988 | San Francisco, CA |
| Barbara L. Klein | June 9, 1988 | San Francisco, CA |

3. The deficiencies as determined by the Commissioner are:

| Petitioner | Tax Year | Deficient Income Tax | Amount in Dispute | Penalty |
|---|---|---|---|---|
| George R. Butz | 12/31/79<br>12/31/80<br>12/31/81 | $ 1,293.00<br>$ 2,617.00<br>$ 48,473.00 | $ 1,293.00<br>$ 2,617.00<br>$ 48,473.00 | * |
| Ann C. Dresser | 12/31/79<br>12/31/82 | $ 323.00<br>$ 19,605.00 | $ 323.00<br>$ 19,605.00 | ** |
| John J. Herda & Susan M. Herda | 12/31/81<br>12/31/82 | $ 16,689.00<br>$ 40,217.00 | $ 16,689.00<br>$ 40,217.00 | *** |
| John Herda & Margaret Herda | 12/31/82<br>12/31/82 | $ 19,920.00<br>$ 23,192.00 | $ 19,920.00<br>$ 23,192.00 | **** |
| Barbara L. Klein | 12/31/81<br>12/31/82 | $ 79,791.00<br>$ 61,988.00 | $ 79,791.00<br>$ 61,988.00 | ***** |

*Butz - I.R.C. Section 6659 - 1979: $388.00; 1980: $785.00; 1981: $14,542.00.

**Dresser -I.R.C. Section 6653(a) - 1982: $980.00; 6659 1982: $5882.00.

***Herda - I.R.C. Section 6653(a) - 1981: $834.00; 1982: $2011.00; 6659 - 1981: $5,007.00; 1982: $12,065.00.

****Herda - I.R.C. Section 6653(a) - 1981: $996.00; 1982: $1,160; 6659 - 1981: $5,976.00; 1982: $6,958.00.

*****Klein - I.R.C. Section 6651 - 1981: $4,897.00; 6653(a) 1981: $4,976.00; 1982: $3,099.00; 6659 - 1981: $23,937.00; 1982: $18,596.00.

4. The determination of taxes set forth in said Notices of Deficiency is based on the following errors:

(As to Derringer, Drake, Crowne, Dillon Oil Technology)
(Mid-Continent as a Second Tier)

A. In determining the tax liability, the Commissioner has erroneously increased taxable income of the petitioners by disallowing a partnership loss from the above Oil Technology Partners ("Partnership") based on the Commissioner's erroneous and arbitrary conclusion that:

(1) Petitioners failed to establish that the underlying events, transactions and expenditures occurred in fact or in substance;

(2) The claimed losses, deductions and tax credits did not originate in a trade or business or in a transaction entered into for profit;

(3) The notes executed by Petitioners in favor of the Partnership are non-recourse, contingent, speculative and lacking in economic substance;

(4) Petitioners were not at risk within the meaning of IRC Sec. 465 for any amounts in excess of those actually paid in cash to the Partnership, and thus said losses are in excess of Petitioners' adjusted basis.

(5) The claimed losses and deductions materially distorted income and;

(6) The stated price of the technology license and the various extraction rights exceed the actual cost to the Partnership for those items. Thus, losses and deductions based thereon are disallowed since they lack economic reality.

Furthermore, the claimed losses, deductions and tax credits are unallowable because they derive from expenditures which:

(7) Were incurred prior to the commencement of any business activity;

(8) Do not qualify as ordinary and necessary business expenses of the Partnership or expenses incurred by the partnership for the production of income;

(9) Were not properly accrued by the Partnership;

(10) Were not incurred by the Partnership in connection with the purpose designated by the Partnership;

(11) Were capital in nature.

In addition, it has not been shown:

(12) That the entity from which the Partnership purportedly licensed a technology portfolio (Elektra or Hemisphere) had any rights to such property which could be licensed;

(13) What the fair market value of the purported technology license is, and that the purported (stated) price of the license to the Partnership, did not unreasonably exceed the fair market value of such license;

(14) What the fair market value of the extraction rights to the Monroe Gas Fields is, and that the purported (stated) price of such extraction rights to the Partnership, did not unreasonably exceed the fair market value of such rights; and

(15) That the Partnership had any rights to the extraction of the Wyoming-Utah tar sands, the fair market value of such rights, if any; and that the purported (stated) price of such extraction rights did not unreasonably exceed the fair market value thereof.

(16) License fees claimed by the Partnership do not qualify as research and experimental expenditures under I.R.C. Sec. 174.

In addition, with respect to advanced minimum royalties claimed by the Partnership, it has not been established:

(17) That the amounts claimed were paid or accrued with respect to oil, gas, or other mineral products which were sold in the same year;

(18) That alleged payments constitute substantially uniform royalties to be paid over the life of the lease or otherwise qualify under the provisions of I.R.C. Sec. 612 and the regulations thereunder, and;

(19) That the amounts claimed do not constitute capital expenditures; therefore,

(a) The Commissioner erroneously disallowed the petitioners' share of the Partnership deduction for License Fees.

(b) The Commissioner erroneously disallowed the petitioners' share of the Partnership deduction for Consulting Fees.

(c) The Commissioner erroneously disallowed the petitioners' share of the Partnership deduction for Legal Fees.

(d) The Commissioner erroneously disallowed the petitioners' share of the Partnership deduction for Amortization of Organization Costs.

(e) The Commissioner erroneously disallowed the petitioners' share of the Partnership deduction for Guaranteed Payment made to the General Partner.

B. In determining the tax liability, the Commissioner has erroneously proposed an addition to tax under Code Section 6621(d).

C. As affirmative Defense the Petitioners assert that the allegations of Respondent amount to allegations of fraud and are scandalous and therefore, under the Rules of the United States Tax Court, the burden of going forward on all such issues must be shifted to the Respondent and it should be limited therein to untainted evidence.

D. As affirmative Defense the Petitioners assert that the allegations of Respondnent amount to allegations of fraud and are scandalous and therefore, under the Rules of the United States Tax Court, the burden of going forward on all such issues must be shifted to the Respondent and it should be limited therein to untainted evidence.

D. As an additional affirmative Defense the Petitioners allege that the wife of the husband petitioner should be deemed an innocent spouse and not liable for any deficiency. The innocent spouse is not familiar at all with the underlying investment nor the basis for the claimed deductions in that the husband managed the activity, made all of the decisions and did not disclose any material facts and circumstances to the innocent spouse, the wife.

5. The facts upon which petitioners rely as the basis of this proceeding are as follows:

A. The Oil Technology Partners (the "Partnership") were organized as a limited partnership under the laws of Pennsylvania on October 15, 1981 to acquire producing wells and their adjoining properties, and to improve production from those properties by applying enhanced oil recovery and advanced production technologies.

B. In 1981, petitioners purchased an interst in a Colorado Partnership, which purchased interests in the Partnership by making a capital contribution in 1981.

C. That petitioners paid substantial amounts to the Partnership on December 31, 1981, and executed various negotiable promissory notes.

D. On December 31, 1981, petitioners assumed unconditional liability to the extent of $56,250 per unit of the Partnership's liability to Hemisphere Licensing Corporation ("Hemisphere").

E. In 1981, the Partnership began investigating the primary and secondary oil and gas recovery potential of a 60 acre tract ("Properties") subject to the leasehold working interest held by Tulesbond, Ltd. ("Tulsebond") in the E. O. Gregory lease covering 1,126 acres in the Parker Township, Butler County, Pennsylvania.

F. In 1981, the Partnership retained Lewin Energy Corporation ("Lewin Energy") to conduct a geological investigation of the Properties. The geological investigation resulted in Lewin Energy reporting sufficient oil and gas reserves for profitable operations.

G. In 1981, the Partnership retained legal counsel to render a title opinion of Tulsebond's leasehold working interest in the Properties.

H. In 1981, the Partnership retained Lewin Energy to prepare a financial analysis report based upon its investigation of reserves on the Properties. Lewin Energy's report indicated a favorable profit and cash flow projection based upon assumptions and projections used by the U.S. Department of Energy and other oil industry experts.

I. In 1981, the Partnership, relying on reports furnished by oil industry experts, acquired the operating rights on the Properties held by Tulsebond. Tulsebond conveyed a 100% working interest to the Partnership, subject to the landowner's royalty interest of 12.5% and a 6.25% overriding royalty interest to Tulsebond. In consideration for the conveyance, Partnership agreed to pay $170,437 (Terms: $30,937 cash; 492,156 on or before 5.1.82; $47,344 on or before 5/1/83).

J. In 1981, the Partnership retained Technical Enterprises, Inc. ("Operator") to manage the existing wells on the Properties, make tests for future wells and plug dry holes and provide general maintenance of the Properties.

K. In 1981, the Partnership retained Petroleum Sciences, Inc. to manage oil and gas production facilities and to advise the Partnership of the research and development of enhanced oil recovery ("EOR") technologies and processes.

L. In 1981, the Partnership retained Northbrook Corporation to locate additional target fields likely to contain sufficient petroleum reserves and to conduct negotiations on behalf of the Partnership once a target field was identified.

M. In 1981, the Partnership retained Technology Catalysts, Inc. ("Technology") to conduct an investigation of EOR and other oil and gas technologies and processes held by Hemisphere Licensing Corporation ("Hemisphere"). Technology's findings reported that Hemisphere offered the Partnership the best opportunity in the United States to obtain rights to advance oil and gas recovery technologies.

N. In 1981, the Partnership further retained legal counsel to render an opinion as to the scope of rights in certain inventions and patents held only by Hemisphere.

O. On December 31, 1981, after considerable arms-length negotiations and based on the favorable reports of Technology (See M) and legal counsel (see above), the Partnership entered into an agreement ("License") with Hemisphere to obtain the rights to use all current and future inventions and patents ("Technologies") held by Hemisphere.

P. On December 31, 1981, in consideration for the License and for research and experimentation, the Partnership agreed to pay Hemisphere $5,050,000 for the first years right to use the Technologies. The Partnership paid $362,750 cash and executed a negotiable recourse promissory note ("Note") in the amount of $4,687,250 in 1981. The Note is due on December 31, 2006 and bears interest at 10% per annum.

Q. Hemisphere does not possess either a capital interest or a net profits interest in the Partnership.

R. In 1981, the Partnership paid or incurred $47,344 of organization costs to which the Partnership elected to amortize over sixty months pursuant to Section 709 of the Internal Revenue Code of 1954, as amended, ("Code"). Therefore, the Partnership properly reported amortization expense in the amount of $2,367.00.

S. In 1981, the Partnership paid or incurred $355,078 in syndication costs which were properly capitalized.

T. In 1981, the Partnership paid or incurred $5,988 in consulting fees.

U. In 1981, the Partnership paid or incurred legal fees in the amount of $2,692 for legal services not rendered in the syndication or organization of the Partnership.

V. In 1981, the Partnership paid or incurred $23,950 for guaranteed payments to the General Partner.

WHEREFORE, petitioners pray that the Court may hear this proceeding, decide and order that no deficiency in income tax and additions to tax is due and owing from petitioners and grant such other and further relief and the Court may deem proper.

Respectfully submitted,

OD0102

DECLAN J. O'DONNELL, NO. 4412
Attorney for Petitioners
6841 South Yosemite
Englewood, Colorado 80112
(303) 721-1177

RECEIVED BY: DECLAN J. O'DONNELL
DATE: 6/16/88

Internal Revenue Service — Department of the Treasury

Date: JUN 9 1988

In Reply Refer to:
AP:SF:
Person to Contact:
Gerry Andrews
Contact Telephone Number:
(702) 388-6233
TIN: [redacted]

John J. Herda & Susan M. Herda
9680 Sultana
Las Vegas,, NV 89118

| Tax Year Ended: | Deficiency | Penalty Section 6653(a) | 6659 | | |
|---|---|---|---|---|---|
| December 31, 1981 | $ 16689.00 | $ 834.00 | $ 5007.00 | $ 0.00 | $ 0.00 |
| December 31, 1982 | $ 40217.00 | $ 2011.00 | $ 12065.00 | $ 0.00 | $ 0.00 |

For returns required to be filed after December 31, 1981, if the penalty under Section 6653(a) applies, the penalty under Section 6653(a)(2) will also apply in an amount to be determined.

Dear Taxpayer:

We have determined that there is a deficiency (increase) in your income tax as shown above. This letter is a NOTICE OF DEFICIENCY sent to you as required by law. The enclosed statement shows how we figured the deficiency.

If you want to contest this deficiency in court before making any payment, you have 90 days from the above mailing date of this letter (150 days if addressed to you outside of the United States) to file a petition with the United States Tax Court for a redetermination of the deficiency. The petition should be filed with the United States Tax Court, 400 Second Street NW, Washington, D.C. 20217, and the copy of this letter should be attached to the petition. The time in which you must file a petition with the Court (90 or 150 days as the case may be) is fixed by law and the Court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife, and both want to petition the Tax Court, both must sign the petition or each must file a separate, signed petition. You can get a copy of the rules for filing a petition by writing to the Clerk of the United States Tax Court, at the address shown in this paragraph.

If you decide not to file a petition with the Tax Court, we would appreciate it if you would sign and return the enclosed waiver form. This will permit us to assess the deficiency quickly and will limit the accumulation of interest. The enclosed envelope is for your convenience. If you decide not to sign and return the waiver and you do not timely petition the Tax Court, we will assess and bill you for the deficiency after 90 days from the above mailing date of this letter (150 days if this letter is addressed to you outside the United States).

If you have any questions, please contact the person whose name and telephone number are shown above.

Sincerely yours,

Lawrence B. Gibbs
Commissioner
By
Richard [signature]
Acting Associate Chief, Appeals Office

Enclosures:
Copy of this letter
Waiver
Statement
Envelope

San Francisco Appeals Office
160 Spear St., Suite 400
San Francisco, CA 94105

Letter 894(RO)(Rev.4-82)

Internal Revenue Service

Department of the Treasury

Date:

Taxpayer's Name(s):
John J. Herda & Susan M. Herda
Person to Contact:
Gerry Andrews
Contact Telephone Number:
(702) 388-6233

Harold P. Gewerter, Esq.
330 S. Third St. Ste.1100
Las Vegas,,, NV 89101

Dear Sir(s):

The enclosed material is furnished under the provisions of a power of attorney or other authorization on file with us. For your convenience, we have listed the name(s) of the taxpayer(s) to whom this material relates above.

If you have any questions, please contact the person whose name and telephone number are shown above.

Sincerely yours,

Richard Clark

Acting Associate Chief,
Appeals Office

Enclosures:
Statements
Letters

EXPLANATION OF ADJUSTMENTS
ELECTRA/HEMISPHERE

1. The distributive share of all losses, deductions, and tax credits claimed by you from the Crowne and Dillon Oil Partnerships in the 1981 and 1982 tax years are disallowed for the following reasons:

(a) You have failed to establish that the underlying events, transactions and expenditures occurred in fact or in substance;

(b) The claimed losses, deductions and tax credits did not originate in a trade or business or in a transaction entered into for profit;

(c) The notes executed by you in favor of the partnership are non-recourse, contingent, speculative and lacking in economic substance;

(d) You were not at risk within the meaning of IRC Sec. 465 for any amounts in excess of those actually paid in cash to the partnership, and thus said losses are in excess of your adjusted bases.

(e) The claimed losses and deductions materially distorted income and;

(f) The stated prices of the technology license and the various extraction rights exceed the actual cost to the partnership for those items. Thus, losses and deductions based thereon are disallowed because of the lack of economic reality.

2. Furthermore, the claimed losses, deductions and tax credits are unallowable because they derive from expenditures which:

(a) Were incurred prior to the commencement of any business activity;

(b) Do not qualify as ordinary and necessary business expenses of the partnerships or expenses incurred by the partnerships for the production of income;

(c) Were not properly accrued by the partnerships;

(d) Were not incurred by the partnerships in connection with the purpose designated by the partnerships;

(e) Were capital in nature.

3. In addition, it has not been shown:

(a) That the entity from which the partnerships purportedly licensed a Technology Portfolio (Elektra or Hemisphere) had any rights to such property which could be licensed;

(b) What the fair market value of the purported technology license is, and that the purported (stated) price of the license to the partnerships did not unreasonably exceed the fair market value of such license;

(c) What the fair market value of the extraction rights to the Monroe Gas Field is, and that the purported (stated) price of such extraction rights to the partnerships did not unreasonably exceed the fair market value of such rights; and

(d) That the partnerships had any rights to the extraction of Wyoming-Utah tar sands; the fair market value of such rights, if any; and that the purported (stated) price of such extraction rights did not unreasonably exceed the fair market value thereof.

4. In addition, license fees claimed by the partnerships do not qualify as research and experimental expenditures under IRC Sec. 174.

5. In addition, with respect to advanced minimum royalties claimed by the partnerships it has not been established:

(a) That the amounts claimed were paid or accrued with respect to oil, gas, or other mineral products which were sold in the same year;

(b) That alleged payments constitute substantially uniform royalties to be paid over the life of the lease or otherwise qualify under the provisions of IRC Sec. 612 and the regulations thereunder, and

(c) That the amounts claimed do not constitute capital expenditures.

The losses, deductions, and tax credits disallowed for the reasons stated are as follows:

| | 1981 | 1982 |
|---|---|---|
| Crowne Oil Partnership | 50,404 | 46,930 |
| Dillon Oil Partnership | | 49,877 |

TAXPAYER: John J. Herda & Susan M. Herda CONTINUATION SHEET PAGE 1

SECTION 6653(a) and SECTION 6653(a)(2) NEGLIGENCE PENALTIES

It is determined that part of the underpayment of tax for the taxable year(s) ended December 31, 1981 December 31, 1982

is due to negligence or intentional disregard of rules and regulations. Consequently, the 5 per centum addition to the tax provided by section 6653(a) of the Internal Revenue Code of 1954 is asserted for these years; and for returns required to be filed after December 31, 1981, the addition to the tax in the amount of 50 per centum of the interest attributable to the said portion of the underpayment provided by section 6653(a)(2) of the Internal Revenue Code of 1954 is asserted for each of these years.

SECTION 6659 VALUATION OVERSTATEMENT

It is determined that part or all of the underpayment of tax for the taxable year(s) shown on Schedule 1 is due to a valuation overstatement. Therefore, a percentum (see below) of the portion of the deficiency attributable to such overstatement is added as provided under section 6659 of the Internal Revenue Code of 1954 for the year(s) indicated on Schedule 1.

1981: $16,689 at 30%

1982: $40,217 at 30%

TAXPAYER: John J. Herda & Susan M. Herda

CONTINUATION SHEET PAGE 2

SECTION 6621(c) INTEREST ON SUBSTANTIAL UNDERPAYMENTS ATTRIBUTABLE TO TAX-MOTIVATED TRANSACTIONS

The entire underpayment of your income tax(es) for the tax year(s)
December 31, 1981 December 31, 1982
is a substantial underpayment attributable to tax motivated transactions under section 6621(c), formerly section 6621(d), of the Internal Revenue Code.

Accordingly, the annual rate of interest payable on your income taxes for the tax year(s) stated above resulting from the substantial underpayment of tax attributable to tax motivated transactions shall be 120 percent of the adjusted rate established under section 6621 (b) of the Internal Revenue Code.

TAXPAYER: John J. Herda & Susan M. Herda

Statutory Notice Statement
Schedule 1-A

SECTION 6653(a)(2) NEGLIGENCE PENALTY

The IRC section 6653(a)(2) penalty referred to herein is equal to 50 percent of the interest amount due on the portion of the underpayment for each of the years ended

due to negligence or intentional disregard. This penalty is in addition to the 5 percent penalty imposed herein pursuant to IRC section 6653(a)(1). The IRC section 6653(a)(2) penalty applies to $ 16,689 and $40,217 of the liability for the taxable years ended December 31, 1981 and December 31, 1982 respectively, which is the underpayment attributable to the following adjustment(s) herein:

| Adjustment(s) | Taxable Year | Dollar Amount |
|---|---|---|
| Partnership Loss Crown Oil | 1981 | $ 50,404 |
| Partnership Loss Crown Oil | 1982 | $ 46,930 |
| Partnership Loss Dillon Oil | 1982 | $ 49,877 |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

AP:SF: (Gerry Andrews) 90-D

FORM 870 | Department of the Treasury - Internal Revenue Service

Waiver of Restrictions on Assessment and Collection of Deficiency in tax and Acceptance of Overassessment

Date received by Internal Revenue Service

Names and address of taxpayers
(Number, street, city or town, State, ZIP code)
John J. Herda & Susan M. Herda
9680 Sultana
Las Vegas,, NV 89118

Social Security or employer identification number
[redacted]

Increase in Tax and Penalties

| Tax year ended | Amount of tax | Penalty |
|---|---|---|
| December 31, 1981 | $ 16689.00 | $ 5841.00* |
| December 31, 1982 | $ 40217.00 | $ 14076.00* |
| | $ | $ |

Decrease in Tax and Penalties

| Tax year ended | Amount of tax | Penalty |
|---|---|---|
| | $ | $ |
| | $ | $ |
| | $ | $ |

| | | Date |
|---|---|---|
| | | |

Remarks (if additional space is needed, use back of form)
See continuation sheet(s)
* Amount(s) of penalty(ies) under section 6653(a)(2) or 6653(b)(2) will be determined if applicable.

The entire underpayment of your income tax(es) for the tax year(s) December 31, 1981 December 31, 1982 is a substantial underpayment attributable to tax motivated transactions under section 6621(c), formerly section 6621(d), of the Internal Revenue Code.

Consent to Assessment and Collection

I consent to the immediate assessment and collection of any deficiencies (increase in tax and penalties) and accept any overassessment (decrease in tax and penalties) shown above, plus any interest provided by law. I understand that by signing this waiver, I will not be able to contest these years in the United States Tax Court, unless additional deficiencies are determined for these years.

Signatures

| \ / | Date |
|---|---|
| \ / | Date |
| \ By — Title | Date |

Instructions

General Information

If you consent to the assessment of the deficiencies shown in this waiver, please sign and return the form in order to limit any interest charge and expedite the adjustment to your account. Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are so entitled. It will not prevent us from later determining, if necessary, that you owe additional tax; nor extend the time provided by law for either action.

If you later file a claim and the Service disallows it, you may file suit for refund in a district court or in the United States Court of Claims, but you may not file a petition with the United States Tax Court.

We will consider this waiver a valid claim for refund or credit of any overpayment due you resulting from any decrease in tax and penalties determined by the Internal Revenue Service, shown above, provided you sign and file it within the period established by law for making such a claim.

Who Must Sign

If you filed jointly, both you and your spouse must sign. If this waiver is for a corporation, it should be signed with the corporation name, followed by the signatures and titles of the corporate officers authorized to sign. An attorney or agent may sign this waiver provided such action is specifically authorized by a power of attorney which, if not previously filed, must accompany this form.

If this waiver is signed by a person acting in a fiduciary capacity (for example, an executor, administrator, or a trustee) Form 56, Notice Concerning Fiduciary Relationship, should, unless previously filed, accompany this form.

Department of the Treasury - Internal Revenue Service

# Income Tax Examination Changes

| Name and Address of Taxpayer | S S or E I Number | Filing Status | Return Form No |
|---|---|---|---|
| JOHN J. & SUSAN M. HERDA<br>9680 SULTANA<br>LAS VEGAS, NV. 89118 | [redacted] | JOINT | 1040 |
| | Person with whom examination changes were discussed | Name and Title HAROLD P. GEWERTER, ESQ. | |

| 1. Adjustments to Income | Year: 1981 | Year: 1982 | Year: |
|---|---|---|---|
| A. PARTNERSHIP LOSS CROWNE OIL | $ 50,404 | $ 46,930 | $ |
| B. PARTNERSHIP LOSS DILLON OIL | | 49,877 | |
| C. INTEREST INCOME CROWNE OIL | -18 | | |
| D. | | | |
| E. | | | |
| F. | | | |
| G. | | | |
| H. | | | |
| I. | | | |
| J. | | | |
| K. | | | |
| 2. Total Adjustments | 50,386 | 96,807 | |
| 3. Taxable income shown on return or as previously adjusted | 28,166 | 26,510 | |
| 4. Corrected taxable income | 78,552 | 123,317 | |
| 5. Tax 81-SchG 82-SchG | 22,126 | 44,812 | |
| 6. | | | |
| 7. Corrected tax liability | 22,126 | 44,812 | |
| 8. Less Credits A. INVESTMENT CREDIT | | 272 | |
| B. | | | |
| C. | | | |
| D. | | | |
| 9. Balance (line 7 less total of lines 8A thru 8D) | 22,126 | 44,540 | |
| 10. Plus Additional Taxes A. | | | |
| B. | | | |
| C. | | | |
| D. | | | |
| 11. Total corrected income tax liability (line 9 + 10A,B,C,D) | 22,126 | 44,540 | |
| 12. Total tax shown on return or as previously adjusted | 5,437 | 4,323 | |
| 13. Deficiency or Overassessment (line 11 adjusted by line 12) | 16,689 | 40,217 | |
| 14. Adjustments to prepayment credits | 0 | 0 | |
| 15. Balance due or Overpayment (line 13 adjusted by line 14) (excluding interest) | $ 16,689 | $ 40,217 | $ |
| 16. Penalties, if any | 5,841 | 14,076 | |

Other Information

| | 1981 | 1982 |
|---|---|---|
| SECTION 6653(a)(1) | 834 | 2,011 |
| SECTION 6653(a)(2) | 50% of Interest due on $16,689 | 50% of Interest due on $40,217 |
| | | 12,065 |
| SECTION 6659 | 5,007 | |

| Examiner's Signature | District | Date |
|---|---|---|
| | | 05/26/88 |

Form 4549A (SF-CAS)

Name of Taxpayer: JOHN J. & SUSAN M. HERDA — Schedule 1
ID Number: [redacted] — 05/26/88

1981 SCHEDULE G - INCOME AVERAGING

| | | | |
|---|---|---|---|
| 1. | 1977 Base period income | 13,580 | |
| 2. | 1978 Base period income | 10,159 | |
| 3. | 1979 Base period income | 445 | |
| 4. | 1980 Base period income | 50,986 | |
| 5. | Income earned outside the U.S. | | |
| 6. | Sum of lines 1 through 5 | | 75,170 |
| 7. | Line 6 multiplied by 30% | | 22,551 |
| 8. | 1981 Taxable Income | | 78,552 |
| 9. | Premature or excessive distribution Sec. 72 | | |
| 10. | Line 8 less line 9 | | 78,552 |
| 11. | Excess community income | | |
| 12. | Line 10 less line 11 | | 78,552 |
| 13. | Line 12 less line 7 - Averageable Income | | 56,001 |
| 14. | Line 13 multiplied by 20% | | 11,200 |
| 15. | Sum of lines 7 and 14 | | 33,751 |
| | Sum of lines 11 and 15 | | 33,751 |
| 17. | Tax on amount on line 16 | | 7,626 |
| 18. | Tax on amount on line 15 | 7,626 | |
| 19. | Tax on amount on line 7 | 3,931 | |
| 20. | Line 18 less line 19 | 3,695 | |
| 21. | Line 20 multiplied by 4 | | 14,780 |
| | Lines 22 through 24 completed if entry on line 9 | | |
| 22. | Tax on line 8 | | |
| 23. | Tax on line 10 | | |
| 24. | Line 22 less line 23 | | |
| 25. | Sum of lines 17, 21, and 24 | | 22,406 |
| 26. | Line 25 multiplied by .0125 | | 280 |
| 27. | Line 25 less line 26 - SCHEDULE G TAX | | 22,126 |

Name of Taxpayer: JOHN J. & SUSAN M. HERDA Schedule 2
ID Number: [redacted] 05/26/88

1982 SCHEDULE G - INCOME AVERAGING

| | | | |
|---|---|---|---|
| 1. | 1978 Base period income | 10,159 | |
| 2. | 1979 Base period income | 445 | |
| 3. | 1980 Base period income | 50,986 | |
| 4. | 1981 Base period income | 78,552 | |
| 5. | Income earned outside the U.S. | | |
| 6. | Sum of lines 1 through 5 | | 140,142 |
| 7. | Line 6 multiplied by 30% | | 42,043 |
| 8. | 1982 Taxable Income | | 123,317 |
| 9. | Premature or excessive distribution Sec. 72 | | |
| 10. | Line 8 less line 9 | | 123,317 |
| 11. | Excess community income | | |
| 12. | Line 10 less line 11 | | 123,317 |
| 13. | Line 12 less line 7 - Averageable Income | | 81,274 |
| 14. | Line 13 multiplied by 20% | | 16,255 |
| 15. | Sum of lines 7 and 14 | | 58,298 |
| | Sum of lines 11 and 15 | | 58,298 |
| 17. | Tax on amount on line 16 | | 16,956 |
| 18. | Tax on amount on line 15 | 16,956 | |
| 19. | Tax on amount on line 7 | 9,992 | |
| 20. | Line 18 less line 19 | 6,964 | |
| 21. | Line 20 multiplied by 4 | | 27,856 |
| | Lines 22 through 24 completed if entry on line 9 | | |
| 22. | Tax on line 8 | | |
| 23. | Tax on line 10 | | |
| 24. | Line 22 less line 23 | | |
| 25. | Sum of lines 17, 21, and 24 - SCHEDULE G TAX | | 44,812 |