Name of Taxpayer: JOHN J. & SUSAN M. HERDA Schedule 3
Identification Number: [redacted] 05/26/88

1981 - EXPLANATION OF INTEREST ON TAX MOTIVATED TRANSACTIONS

It is determined that part of the underpayment of tax is attributable to tax motivated transactions as defined under Section 6621(c) of the Internal Revenue Code. Consequently, the annual rate of interest accruing after December 31, 1984 will be 120% of the adjusted rate established under Section 6621(c) on any substantial underpayment attributable to tax motivated transactions. Interest applying to the amount on line 5 below will be computed and assessed at 120%.

| | | |
|---|---|---|
| 1. | Total corrected tax liability, Form 4549, line 11 | 22,126 |
| 2. | Total corrected tax liability without regard to tax motivated transactions | 5,432 |
| 3. | Line 1 less line 2 - underpayment attributable to tax motivated transactions (0 if under $1,000) | 16,694 |
| 4. | Tax Deficiency, Form 4549, line 13 | 16,689 |
| 5. | Lesser of line 3 or line 4 - amount to which Section 6621(a) applies | 16,689 |

ADJUSTMENTS ATTRIBUTABLE TO TAX MOTIVATED TRANSACTIONS:

1. PARTNERSHIP LOSS CROWNE OIL 50,404

Name of Taxpayer: JOHN J. & SUSAN M. HERDA
Identification Number: [redacted]

Schedule 4
05/26/88

================================================================

1982 - EXPLANATION OF INTEREST ON TAX MOTIVATED TRANSACTIONS

It is determined that part of the underpayment of tax is attributable to tax motivated transactions as defined under Section 6621(c) of the Internal Revenue Code. Consequently, the annual rate of interest accruing after December 31, 1984 will be 120% of the adjusted rate established under Section 6621(c) on any substantial underpayment attributable to tax motivated transactions. Interest applying to the amount on line 5 below will be computed and assessed at 120%.

| | | |
|---|---|---|
| 1. | Total corrected tax liability, Form 4549, line 11 | 44,540 |
| 2. | Total corrected tax liability without regard to tax motivated transactions | 4,323 |
| 3. | Line 1 less line 2 - underpayment attributable to tax motivated transactions (0 if under $1,000) | 40,217 |
| 4. | Tax Deficiency, Form 4549, line 13 | 40,217 |
| 5. | Lesser of line 3 or line 4 - amount to which Section 6621(a) applies | 40,217 |

ADJUSTMENTS ATTRIBUTABLE TO TAX MOTIVATED TRANSACTIONS:

| | | |
|---|---|---|
| 1. | PARTNERSHIP LOSS CROWNE OIL | 46,930 |
| 2. | PARTNERSHIP LOSS DILLON OIL | 49,877 |

## EXPLANATION OF THE NEGLIGENCE PENALTY

It has been determined that the underpayment of tax on line 6 below is due to negligence or intentional disregard of rules and regulations. Consequently, an addition to the tax is charged as provided by Section 6653(a) of the Internal Revenue Code.

1981 - NEGLIGENCE PENALTY - Section 6653(a)(1)(A)

| | | | |
|---|---|---|---|
| 1. | Total corrected tax liability, Form 4549, line 11 | | 22,126 |
| 2. | Total tax on return, Form 4549, line 12 (zero if the return was filed late) | 5,437 | |
| 3. | FICA tax on tip income not reported to employer (zero if the return was filed timely) | 0 | |
| 4. | Line 1 less sum of lines 2 and 3 - total underpayment | | 16,689 |
| 5. | Underpayment not due to negligence | | 0 |
| 6. | Line 4 less line 5 - Underpayment due to negligence | | 16,689 |
| 7. | Applicable penalty rate | | 5.00% |
| 8. | Line 6 multiplied by line 7 - Negligence Penalty | | 834 |
| 9. | Previously assessed Negligence Penalty | | 0 |
| 10. | Line 8 less line 9 - Negligence Penalty Due | | 834 |

1981 - NEGLIGENCE PENALTY - Section 6653(a)(1)(B)

Section 6653(a)(1)(B) provides for an addition to the negligence penalty of Section 6653(a)(1)(A) in the amount of 50% ofthe interest due solely to negligence. The amount shall be computed on the amount on line 15 below at the time the deficiency(ies) determined in this report is (are) paid or assessed, whichever is earlier.

| | | | |
|---|---|---|---|
| 11. | Lesser of total underpayment from line 4 above or balance due from line 15 of Form 4549 | | 16,689 |
| 12. | Underpayment excluding negligent issues | 5,432 | |
| 13. | Total tax on return, Form 4549, line 12 | 5,437 | |
| 14. | Line 12 less line 13 - Underpayment not due to negligence | | 0 |
| 15. | Line 11 less line 14 - Underpayment due to negligence | | 16,689 |

ADJUSTMENTS TO WHICH NEGLIGENCE PENALTY APPLIES:

| | | |
|---|---|---|
| 1. | PARTNERSHIP LOSS CROWNE OIL | 50,404 |

Name of Taxpayer: JOHN C. & SUSAN M. HERDA Schedule 6
Identification Number: [redacted] 05/26/88

## EXPLANATION OF THE NEGLIGENCE PENALTY

It has been determined that the underpayment of tax on line 6 below is due to negligence or intentional disregard of rules and regulations. Consequently, an addition to the tax is charged as provided by Section 6653(a) of the Internal Revenue Code.

1982 - NEGLIGENCE PENALTY - Section 6653(a)(1)(A)

| | | | |
|---|---|---|---|
| 1. | Total corrected tax liability, Form 4549, line 11 | | 44,540 |
| 2. | Total tax on return, Form 4549, line 12 (zero if the return was filed late) | 4,323 | |
| 3. | FICA tax on tip income not reported to employer (zero if the return was filed timely) | 0 | |
| 4. | Line 1 less sum of lines 2 and 3 - total underpayment | | 40,217 |
| 5. | Underpayment not due to negligence | | 0 |
| 6. | Line 4 less line 5 - Underpayment due to negligence | | 40,217 |
| 7. | Applicable penalty rate | | 5.00% |
| 8. | Line 6 multiplied by line 7 - Negligence Penalty | | 2,011 |
| 9. | Previously assessed Negligence Penalty | | 0 |
| 10. | Line 8 less line 9 - Negligence Penalty Due | | 2,011 |

1982 - NEGLIGENCE PENALTY - Section 6653(a)(1)(B)

Section 6653(a)(1)(B) provides for an addition to the negligence penalty of Section 6653(a)(1)(A) in the amount of 50% ofthe interest due solely to negligence. The amount shall be computed on the amount on line 15 below at the time the deficiency(ies) determined in this report is (are) paid or assessed, whichever is earlier.

| | | | |
|---|---|---|---|
| 11. | Lesser of total underpayment from line 4 above or balance due from line 15 of Form 4549 | | 40,217 |
| 12. | Underpayment excluding negligent issues | 4,323 | |
| 13. | Total tax on return, Form 4549, line 12 | 4,323 | |
| 14. | Line 12 less line 13 - Underpayment not due to negligence | | 0 |
| 15. | Line 11 less line 14 - Underpayment due to negligence | | 40,217 |

ADJUSTMENTS TO WHICH NEGLIGENCE PENALTY APPLIES:

| | | |
|---|---|---|
| 1. | PARTNERSHIP LOSS CROWNE OIL | 46,930 |
| 2. | PARTNERSHIP LOSS DILLON OIL | 49,877 |

Name of Taxpayer: JOHN J. & SUSAN M. HERDA
Identification Number: [redacted]

Schedule 7
05/26/88

EXPLANATION OF THE VALUATION OVERSTATEMENT PENALTY

Since part or all of the underpayment of tax is attributable to a valuation overstatement, a percentage of the deficiency due to such overstatement is asserted as a penalty pursuant to Section 6659 of the Internal Revenue Code.

1981 – VALUATION OVERSTATEMENT PENALTY

| | | | |
|---|---|---|---|
| 1. | Valuation claimed | 50,404 | |
| 2. | Valuation per audit | 0 | |
| 3. | Line 1 divided by line 2 X 100 – overstatement percentage | | Over 1000% |
| 4. | Applicable penalty rate | | 30.00% |
| 5. | Underpayment attributable to all issues, excluding adjustments to self-employment tax | | 16,689 |
| 6. | Underpayment attributable to all issues except overvaluation issues, excluding adjustments to self-employment tax | | 0 |
| 7. | Line 5 less line 6 | | 16,689 |
| 8. | Lesser of line 5 or line 7 – underpayment attributable to valuation overstatement (zero if less than $1,000) | | 16,689 |
| 9. | Line 8 multiplied by line 4 VALUATION OVERSTATEMENT PENALTY | | 5,007 |

ADJUSTMENTS TO WHICH VALUATION OVERSTATEMENT PENALTY APPLIES:

| | | |
|---|---|---|
| 1. | PARTNERSHIP LOSS CROWNE OIL | 50,404 |

Name of Taxpayer: JOHN J. & SUSAN M. HERDA | Schedule 8
Identification Number: [redacted] | 05/26/88

==========================================================================

## EXPLANATION OF THE VALUATION OVERSTATEMENT PENALTY

Since part or all of the underpayment of tax is attributable to a valuation overstatement, a percentage of the deficiency due to such overstatement is asserted as a penalty pursuant to Section 6659 of the Internal Revenue Code.

### 1982 - VALUATION OVERSTATEMENT PENALTY

| | | | |
|---|---|---|---|
| 1. | Valuation claimed | 96,807 | |
| 2. | Valuation per audit | 0 | |
| 3. | Line 1 divided by line 2 X 100 - overstatement percentage | | Over 1000% |
| 4. | Applicable penalty rate | | 30.00% |
| 5. | Underpayment attributable to all issues, excluding adjustments to self-employment tax | | 40,217 |
| 6. | Underpayment attributable to all issues except overvaluation issues, excluding adjustments to self-employment tax | | 0 |
| 7. | Line 5 less line 6 | | 40,217 |
| 8. | Lesser of line 5 or line 7 - underpayment attributable to valuation overstatement (zero if less than $1,000) | | 40,217 |
| 9. | Line 8 multiplied by line 4<br>VALUATION OVERSTATEMENT PENALTY | | 12,065 |

ADJUSTMENTS TO WHICH VALUATION OVERSTATEMENT PENALTY APPLIES:

| | | |
|---|---|---|
| 1. | PARTNERSHIP LOSS CROWNE OIL | 46,930 |
| 2. | PARTNERSHIP LOSS DILLON OIL | 49,877 |

Name of Taxpayer: JOHN J. & SUSAN M. HERDA Schedule 9
Identification Number: [redacted] 05/26/88

=====================================================================

SUMMARY OF ASSESSED PENALTIES

| | 1981 | 1982 |
|---|---|---|
| Negligence, IRC Sec 6653(a)(1)(A) | 834 | 2,011 |
| Negligence, IRC Sec 6653(a)(1)(B) | Penalty will be determined later. | |
| Valuation Overstatement, IRC 6659 | 5,007 | 12,065 |
| Total Penalties, Form 4549, line 16 | 5,841 | 14,076 |

U S TAX COURT
MAIL
'87 JUL -2 AM 10:04

UNITED STATES TAX COURT

UNITED STATES
TAX COURT
FILED
JUL - 2 1987

VULCAN OIL TECHNOLOGY PARTNERS; VANGUARD OIL TECHNOLOGY PARTNERS; DRAKE OIL TECHNOLOGY PARTNERS; DILLON OIL TECHNOLOGY PARTNERS; DERRINGER OIL TECHNOLOGY PARTNERS 1981; DERRINGER OIL TECHNOLOGY PARTNERS 1982; CROWNE OIL TECHNOLOGY PARTNERS; and CARLTON OIL TECHNOLOGY PARTNERS, LTD.; American Energy Resources Inc., Tax Matters Partner

Petitioners,

vs.

COMMISSIONER OF INTERNAL REVENUE SERVICE,

Respondent.

DOCKET NO.

21530-87

| | |
|---|---|
| MAIL CLERK | |
| ADMISSIONS | |
| RECORDED & SERVED | |
| | |
| PUB. FILES | |

**PETITION**

The Petitioners hereby Petition for a readjustment of the Partnership items and a redetermination of the deficiencies set forth by the Commissioner of Internal Revenue in the Final Partnership Administrative Adjustments, copies of which are attached hereto, and as the basis of their case allege as follows:

1. The Petitioners are:

| NAME AND ADDRESS | TAXPAYER IDENTIFYING NUMBER | PLACE FILED |
|---|---|---|
| VULCAN OIL TECHNOLOGY PARTNERS c/o American Energy Resources, Inc., T.M.P. 1360 Sunset Cliffs Boulevard San Diego, California 92107 | 84-0858746 | Ogden, Utah |
| VANGUARD OIL TECHNOLOGY PARTNERS c/o American Energy Resources, Inc., T.M.P. 1360 Sunset Cliffs Boulevard San Diego, California 92107 | 84-0858201 | Ogden, Utah |

SERVED JUL - 6 1987

PLAINTIFF'S EXHIBIT 2

| | | |
|---|---|---|
| DRAKE OIL TECHNOLOGY PARTNERS<br>c/o American Energy Resources, Inc., T.M.P.<br>1360 Sunset Cliffs Boulevard<br>San Diego, California 92107 | 84-0856853 | Ogden, Utah |
| DILLON OIL TECHNOLOGY PARTNERS<br>c/o American Energy Resources, Inc., T.M.P.<br>1360 Sunset Cliffs Boulevard<br>San Diego, California 92107 | 84-0862763 | Ogden, Utah |
| DERRINGER OIL TECHNOLOGY PARTNERS - 1981<br>c/o American Energy Resources, Inc., T.M.P.<br>1360 Sunset Cliffs Boulevard<br>San Diego, California 92107 | 84-0862764 | Ogden, Utah |
| DERRINGER OIL TECHNOLOGY PARTNERS - 1982<br>c/o American Energy Resources, Inc., T.M.P.<br>1360 Sunset Cliffs Boulevard<br>San Diego, California 92107 | 84-0891521 | Ogden, Utah |
| CROWNE OIL TECHNOLOGY PARTNERS<br>c/o American Energy Resources, Inc., T.M.P.<br>1360 Sunset Cliffs Boulevard<br>San Diego, California 92107 | 84-0858166 | Ogden, Utah |
| CARLTON OIL TECHNOLOGY PARTNERS, LTD.<br>c/o American Energy Resources, Inc., T.M.P.<br>1360 Sunset Cliffs Boulevard<br>San Diego, California 92107 | 84-0928771 | Ogden, Utah |

2. The Notices of Final Partnership Administrative Adjustments and the Notices of Deficiency were mailed as follows:

| NAME | DATE MAILED | FROM |
|---|---|---|
| VULCAN OIL TECHNOLOGY PARTNERS | March 30, 1987 | Denver, Colorado |
| VANGUARD OIL TECHNOLOGY PARTNERS | March 30, 1987 | Denver, Colorado |

| | | |
|---|---|---|
| DRAKE OIL TECHNOLOGY PARTNERS | April 6, 1987 | Denver, Colorado |
| DILLON OIL TECHNOLOGY PARTNERS | April 15, 1987 | Salt Lake City, Utah |
| DERRINGER OIL TECHNOLOGY PARTNERS - 1981 | March 30, 1987 | Denver, Colorado |
| DERRINGER OIL TECHNOLOGY PARTNERS - 1982 | March 30, 1987 | Denver, Colorado |
| CROWNE OIL TECHNOLOGY PARTNERS | April 15, 1987 | Ogden, Utah |
| CARLTON OIL TECHNOLOGY PARTNERS, LTD. | March 30, 1987 | Denver, Colorado |

3. The Final Partnership Administrative Adjustments by the Commissioner are:

| Partnership/ Petitioner | Tax Year | Administrative Adjustment | Amount in Dispute | Penalty |
|---|---|---|---|---|
| VULCAN OIL | 12/31/83 | $ 6,798,193 | $ 6,798,193 | * |
| VANGUARD OIL | 12/31/83 | $ 4,114,552 | $ 4,114,552 | * |
| DRAKE OIL | 12/31/83 | $23,198,105 | $23,198,105 | * |
| DILLON OIL | 12/31/83 | $17,419,617 | $17,419,617 | * |
| DERRINGER OIL-1981 | 12/31/83 | $ 2,961,638 | $ 2,961,638 | * |
| DERRINGER OIL-1982 | 12/31/83 | $10,233,403 | $10,233,403 | * |
| CROWNE | 12/31/83 | $ 7,606,434 | $ 7,606,434 | * |
| CARLTON | 12/31/83 | $ 1,156,815 | $ 1,156,815 | * |

*Penalties: To be determined under I.R.C. Sections 6621 (Tax Motivated Transactions); 6659 (over-valuation); and 6661 (substantial underpayment).

4. The determination of taxes set forth in said Final Partnership Administrative Adjustment is based on the following errors for each joint petitioner, each involving common issues of fact and of law:

(As to the Petitioner Partnerships)

A. In determining the tax liability, the Commissioner has erroneously increased taxable income of the petitioners by disallowing a partnership loss from Dillon Oil Technology Partners ("Dillon" or "Partnership") based on the Commissioner's erroneous and arbitrary conclusion that:

(1) Petitioners failed to establish that the underlying events, transactions and expenditures occurred in fact or in substance;

(2) The claimed losses, deductions and tax credits did not originate in a trade or business or in a transaction entered into for profit;

(3) The notes executed by Petitioners in favor of the Partnership are non-recourse, contingent, speculative and lacking in economic substance;

(4) Petitioners were not at risk within the meaning of IRC Sec. 465 for any amounts in excess of those actually paid in cash to the Partnership, and thus said losses are in excess of Petitioners' adjusted basis.

(5) The claimed losses and deductions materially distorted income and;

(6) The stated price of the technology license and the various extraction rights exceed the actual cost to the Partnership for those items. Thus, losses and deductions based thereon are disallowed since they lack economic reality.

Furthermore, the claimed losses, deductions and tax credits are unallowable because they derive from expenditures which:

(7) Were incurred prior to the commencement of any business activity;

(8) Do not qualify as ordinary and necessary business expenses of the Partnership or expenses incurred by the partnership for the production of income;

(9) Were not properly accrued by the Partnership;

(10) Were not incurred by the Partnership in connection with the purpose designated by the Partnership;

(11) Were capital in nature.

In addition, it has not been shown:

(12) That the entity from which the Partnership purportedly licensed a technology portfolio (Elektra or Hemisphere) had any rights to such property which could be licensed;

(13) What the fair market value of the purported technology license is, and that the purported (stated) price of the license to the Partnership, did not unreasonably exceed the fair market value of such license;

(14) What the fair market value of the extraction rights to the Monroe Gas Fields is, and that the purported (stated) price of such extraction rights to the Partnership, did not unreasonably exceed the fair market value of such rights; and

(15) That the Partnership had any rights to the extraction of the Wyoming-Utah tar sands, the fair market value of such rights, if any; and that the purported (stated) price of such extraction rights did not unreasonably exceed the fair market value thereof.

(16) License fees claimed by the Partnership do not qualify as research and experimental expenditures under I.R.C. Sec. 174.

In addition, with respect to advanced minimum royalties claimed by the Partnership, it has not been established:

(17) That the amounts claimed were paid or accrued with respect to oil, gas, or other mineral products which were sold in the same year;

(18) That alleged payments constitute substantially uniform royalties to be paid over the life of the lease or otherwise qualify under the provisions of I.R.C. Sec. 612 and the regulations thereunder, and;

(19) That the amounts claimed do not constitute capital expenditures; therefore,

(a) The Commissioner erroneously disallowed the petitioners' share of the Partnership deduction for License Fees.

(b) The Commissioner erroneously disallowed the petitioners' share of the Partnership deduction for Consulting Fees.

(c) The Commissioner erroneously disallowed the petitioners' share of the Partnership deduction for Legal Fees.

(d) The Commissioner erroneously disallowed the petitioners' share of the Partnership deduction for Amortization of Organization Costs.

(e) The Commissioner erroneously disallowed the petitioners' share of the Partnership deduction for Guaranteed Payment made to the General Partner.

B. In determining the tax liability, the Commissioner has erroneously proposed an addition to tax under Code Section 6621(c), 6659 and 6661.

C. As affirmative Defense the Petitioners assert that the allegations of Respondent amount to allegations of fraud and are scandalous and therefore, under the Rules of the United States Tax Court, the burden of going forward on all such issues must be shifted to the Respondent and it should be limited therein to untainted evidence.

5. The facts upon which petitioners rely as the basis of this proceeding are as follows:

A. Each Oil Technology Partnership (the "Partnership") was organized as a limited partnership under the laws of Pennsylvania to acquire producing wells and their adjoining properties, and to improve production from those properties by applying enhanced oil recovery and advanced production technologies.

B. In 1983, each partnership consisted of validly subscribed partners who contributed cash and at risk notes to capitalize the entity.

C. That the partners paid substantial amounts to the Partnership during 1983 and executed various negotiable promissory notes.

D. That during 1983, the partners assumed unconditional liability to the extent of $56,250 per unit of the Partnership's liability to Hemisphere Licensing Corporation ("Hemisphere"), or assigns.

E. In 1983, the Partnerships investigated and worked the primary and secondary oil and gas recovery potential of a 60 acre tract ("Properties") subject to the leasehold working interest held by Tulesbond, Ltd. ("Tulsebond") in the E. O. Gregory lease covering 1,126 acres in the Parker Township, Butler County, Pennsylvania and other similar valuable properties.

F. In 1983, the Partnerships employed Lewin Energy Corporation ("Lewin Energy") to conduct a geological investigation of the Properties. The geological investigation resulted in Lewin Energy reporting sufficient oil and gas reserves for profitable operations on partnership properties.

G. In 1983, the Partnerships retained legal counsel to render a title opinion of Tulsebond's leasehold working interest in the Properties and perform other reasonable and necessary legal services.

H. In 1983, the Partnerships retained Lewin Energy to prepare a financial analysis report based upon its investigation of reserves on the Properties. Lewin Energy's report indicated a favorable profit and cash flow projection based upon assumptions and projections used by the U.S. Department of Energy and other oil industry experts.

I. In 1982, the Partnerships, relying on reports furnished by oil industry experts, acquired the operating rights on the Properties held by Tulsebond. Tulsebond conveyed a 100% working interest to the Partnership, subject to the landowner's royalty interest of 12.5% and a 6.25% overriding royalty interest to Tulsebond. During 1983 these partnerships owned and operated over 100 producing oil and gas wells. The price of oil fell dramatically so many wells were capped and preserved for future exploitation and O.E.R. operations.

J. In 1982, the Partnerships retained Technical Enterprises, Inc. ("Operator") to manage the existing wells on the Properties, make tests for future wells and plug dry holes and provide general maintenance of the Properties, which activity continued through 1983.

K. In 1982, the Partnerships retained Petroleum Sciences, Inc. to manage oil and gas production facilities and to advise the Partnership of the research and development of enhanced oil recovery ("EOR") technologies and processes.

L. In 1982, the Partnerships retained Northbrook Corporation to locate additional target fields likely to contain sufficient petroleum reserves and to conduct negotiations on behalf of the Partnership once a target field was identified.

M. In 1982, the Partnerships retained Technology Catalysts, Inc. ("Technology") to conduct an investigation of EOR and other oil and gas technologies and processes held by Hemisphere

Licensing Corporation ("Hemisphere"). Technology's findings reported that Hemisphere offered the Partnership the best opportunity in the United States to obtain rights to advance oil and gas recovery technologies. Amounts paid by the partnerships were equivalent to fair market value for property and services received.

N. In 1983, the Partnerships retained legal counsel to render an opinion as to the scope of rights in certain inventions and patents held only by Hemisphere.

O. On December 31, 1982, after considerable arms-length negotiations and based on the favorable reports of Technology (See M) and legal counsel (See N), the Partnerships entered into an agreement ("License") with Hemisphere to obtain the rights to use all current and future inventions and patents ("Technologies") held by Hemisphere. The payments are annual and are reasonable in amount and the Partnerships in fact used consultation and advice in 1983 derived from the contract relationship.

P. On December 31, 1983, in consideration for the License and for research and experimentation, the Partnerships paid Hemisphere substantial fees per contract for the annual right to use the Technologies. The Partnership paid some cash and executed a negotiable recourse promissory note ("Note"). The Note is due on December 31, 2006 and bears interest at 10% per annum and partner notes were delivered for payment.

Q. Hemisphere does not possess either a capital interest or a net profits interest in the Partnership and the notes are at risk in nature.

R. Prior to 1983, the Partnerships paid or incurred organization costs to which the Partnerships elected to amortize over sixty months pursuant to Section 709 of the Internal Revenue Code of 1954, as amended, ("Code"). Therefore, the Partnership properly reported amortization expense.

S. Prior to 1983, the Partnerships paid or incurred syndication costs which were properly capitalized.

T. In 1983, the Partnerships paid or incurred consulting fees in connection with the ordinary and necessary operation of the businesses.

U. In 1983, the Partnerships paid or incurred legal fees for legal services not rendered in the syndication or organization of the Partnership.

V. In 1983, the Partnerships paid or incurred certain guaranteed payments to the General Partner.

W. In 1983, each Partnership paid accounting fees to the firm of Peat, Marwick and Mitchell, C.P.A., for preparation of tax returns and financial statements.

WHEREFORE, Partnership/Petitioners pray that the Court may hear this proceeding, decide and order that no deficiency in income tax and additions to tax is due and owing from petitioners, readjust the Final Partnership Administrative Adjustments at the partnership level, shift the burden of going forward with untainted evidence to the Respondent, and grant such other and further relief as the Court may deem proper.

Respectfully submitted,

ADMITTED U.S. TAX COURT

ODO102

DECLAN J. O'DONNELL, NO. 4412
Attorney for Partnership/Petitioners
6841 South Yosemite Street
Englewood, Colorado 80112
(303) 721-1177

Internal Revenue Service

District Director

Department of the Treasury

X-A

Date: APR 15 1987

Name of Partnership:
DILLON OIL TECHNOLOGIES PARTNERS
Taxpayer Identifying Number:
84-0862763
Tax Year Ended:
December 31, 1983
Date FPAA Mailed to Tax
Matters Partner:
APR 15 1987
Person to Contact:
REVIEW COORDINATOR
Contact Telephone Number:
(801) 524-5830

TAX MATTERS PARTNER
DILLON OIL TECHNOLOGIES PARTNERS TMP
1360 SUNSET CLIFFS BLVD
SAN DIEGO, CA 92107

NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

Dea axpayer:

We have determined that there are adjustments to the partnership return as shown on the attached schedule of adjustments, Form 870-P, Settlement Agreement for Partnership Adjustments. This letter is the notice of Final Partnership Administrative Adjustment (FPAA).

If you want to enter into a binding settlement to treat partnership items consistently with the treatment of the items on the partnership return as modified by the FPAA, sign and return the enclosed Form 870-P. If the Commissioner accepts your offer of settlement, the treatment of partnership items under the settlement will be binding and will not be affected by any later judicial determination.

If you are the tax matters partner (the partnership representative who deals with IRS) and want to contest these adjustments in court, you have 90 days from the date this letter was mailed to file a petition for a readjustment of the partnership items with the United States Tax Court, the United States Claims Court, or the District Court of the United States for the district in which the partnership's principal place of business is located. During this 90- period, no other partner may file a petition for judicial review, and the filing of a petition by the tax matters partner precludes all other actions.

If the tax matters partner has NOT filed a petition by the 90th day from the date the FPAA was mailed, any other partner entitled to receive this notice under section 6223 of the Internal Revenue Code (or any group of partners who together have an interest of 5 percent or more in the profits of the partnership (5-percent group)) may petition one of these courts after the 90th day, but on or before the 150th day, from the date the FPAA was mailed to the tax matters partner. Only one petition to the court is allowed. If more than one petition is filed, the first petition filed in the Tax Court will go forward. All other petitions (even those filed earlier) will be dismissed. If no petition is filed in the Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to 400 Second Street, N.W., Washington, D.C. 20717. Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife, and both want to petition the Tax Court, both must sign the petition or each must file a separate, signed petition.

(Continued on following page)

As a condition to filing a petition in either the appropriate District Court or the Claims Court, the partner filing the petition (including each member of a 5-percent group which files a petition) must deposit with the Internal Revenue Service, on or before the day the petition is filed, the amount by which the partner's tax liability would be increased if the treatment of partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro-rata share of the partnership's adjustments into account in refiguring your tax.

If no readjustment petition is filed in any of the courts listed on the front of this letter, this FPAA becomes binding and you will be billed for any additional tax that you may owe under the FPAA. You will not be permitted to contest the treatment of partnership items under the FPAA in any refund claim or suit.

The law permits us to bill you after 150 days from the mailing date of the FPAA to the tax matters partner. However, if a petition is filed in the Tax Court, you will not be billed until the Tax Court decision is final.

If you have any questions about this matter, please write to the person whose name and addr--s are shown on this letter. If you write, attach this letter to help identify your acc ..t. Keep the copy for your records. Also include your telephone number and the most convenient time for us to call you in case we need more information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter. If the number is outside your local calling area, thaere will be a long-distance charge to you.

You may call the IRS telephone number listed in your local directory. An IRS employee there may be able to help you, but the contact person at the address shown on this letter is most familiar with your case.

Thank you for your cooperation.

Sincerely yours,
Lawrence B. Gibbs
Commissioner
by
Carol M. Fay
Carol M. Fay
District Director

Enclosures:
Form 870-P
Copy of this letter

Letter 1830(DO) (10-84)

Explanation of Adjustments
Dillon Oil Technology Partners
Partnership Year Ended December 31, 1983

1. It is determined that the deductions reported by Dillon Oil Technology Partners (A TEFRA Partnership) on its 1983 partnership income tax return in the amount of $17,419,617.00 are disallowed for the following reasons:

(a) It has not been established that the underlying events, transactions and expenditures occurred in fact or in substance;

(b) It has not been established that the claimed deductions originated in a trade or business or in a transaction entered into for profit;

(c) It has not been established that the claimed deductions do not materially distort income;

(d) It has not been established that the stated prices of the technology license and the various extraction rights do not exceed the actual cost to the partnership for those items. Thus, deductions based thereon are disallowed since they lack economic reality.

(e) It has not been established that the notes executed by the partners in favor of the partnership are not non-recouse, are not contingent, are not speculative and do not lack economic substance.

Futhermore, the claimed deductions are not allowed because it has not been established that they were not derived from expenditures which:

(a) Were incurred prior to commencement of a business activity;

(b) Do not qualify as ordinary and necessary business expenses of the partnership or expenses incurred by the partnership for the production of income;

(c) Were not properly accrued by the partnership;

(d) Were not incurred by the partnership in connection with the purpose designated by the partnership; and

(e) Were capital in nature.

Explanation of Adjustments
Dillon Oil Technology Partners
Partnership Year Ended December 31, 1983

1. (Cont'd)

In addition, it has not been shown:

(a) That the entity from which the partnership purportedly licensed a technology portfolio had any rights to such property which could be licensed;

(b) What the fair market value of the purported technology license is, and that the purported price of the license to the partnership, did not unreasonably exceed the fair market value of such license.

(c) What the fair market value of the extraction rights to the Parker Field is, and that the purported price of such extraction rights to the partnership, did not unreasonably exceed the fair market value of such rights.

In addition, it has not been established that license fees claimed by the partnership qualify as research and experimental expenditures under Internal Revenue Code Section 174.

Additionally, the deductions are not allowable because they have not been adequately substantiated as to amount or the nature of the deduction.

Furthermore, the deductions are not allowable because it has not been established that:

(a) the amount(s) were ordinary and necessary business expenses;

(b) the amounts were expended for the purpose designated;

(c) the method of accounting for such items clearly reflect income.

In the event the transactions are substantiated as to amount and nature of the item; and it is held that the transactions have economic substance, it is determined that the partners are not at risk within the meaning of Internal Revenue Code Section 465 for any amounts in excess of those actually paid in cash to the partnership, and thus said losses are in excess of the partner's adjusted basis.