Explanation of Adjustments
Dillon Oil Technology Partners
Partnership Year Ended December 31, 1983

2. With respect to distributive share items it has been determined for the reasons stated above in explanation 1 that:

(a) net investment income (loss) for tax preference items is -0-;

(b) depletion is -0-;

(c) net earning from self-employment is -0-;

(d) basis of new and used recovery property eligible for investment tax credit is -0-.

With respect to the distributive share item, basis of new and used recovery property eligible for investment tax credit, in addition to the explanation in 1 and 2 above it was determined that the distributive share amounts are -0- because it has not been established:

(a) that the property was investment credit property as defined in section 48 of the Internal Revenue Code;

(b) that the taxpayer had a basis in such property.

This Final Partnership Administrative Adjustment for the tax year ended December 31, 1983 does not reflect possible adjustments to Oil Technology Group-Illinois Basin Partnership, a TEFRA partnership in which you were a partner in 1983. Oil Technology Group-Illinois Basin Partnership is currently under examination pursuant to the TEFRA provisions of IRC section 6221 thru 6231. You will be informed of any adjustments to your 1983 returns after completion of the partnership examination.

Page ____ of ____ pages

Form **4605-A** (Rev. May 1978)

Department of the Treasury—Internal Revenue Service

# Examination Changes - Partnerships, Fiduciaries, Small Business Corporations, and Domestic International Sales Corporations

| Name and Address | Employer Identification Number | Form Number |
|---|---|---|
| *Dillon Oil Technologies Partners*<br>*c/o Louis F. Coppage*<br>*1080 Sorrento Dr.*<br>*San Diego, Ca 92107* | *84-0862763* | *1065* |
| | Person Examination Changes Were Discussed With | Name:<br>Title: |

| 1. Adjustments to ordinary, distributable net, or taxable income. | Year: *1983* | Year: | Year: |
|---|---|---|---|
| a. *Deductions* | *17,419,617.00* | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| 2. Total adjustments to ordinary, distributable net, or taxable income. | *17,419,617.00* | | |
| 3. Ordinary, distributable net, or taxable income as reported. | *(17,292,423.00)* | | |
| 4. Corrected ordinary, distributable net, or taxable income. | *127,195.00* | | |
| 5. Other adjustments. | | | |
| a. | | | |
| (1) Adjustment | | | |
| (2) As reported | | | |
| (3) Corrected | | | |
| b. | | | |
| (1) Adjustment | | | |
| (2) As reported | | | |
| (3) Corrected | | | |

Remarks

0042

| Examiner's Signature | District Office | Date |
|---|---|---|
| *Michael D Mayhue* | *SLC* | *4-14-87* |

X-A

**Internal Revenue Service Center**
**Southwest Region**

000153348

**Department of the Treasury**
PO BOX 9941
OGDEN, UT 84409

**Date:** 04-15-87

AMERICAN ENERGY RESOURCES, INC - TMP
CROWNE OIL TECHNOLOGY PARTNERS
1360 SUNSET CLIFFS BLVD
SAN DIEGO, CA 92107

**Name of Partnership:**
CROWNE OIL TECHNOLOGY PARTNERS
**Taxpayer Identifying Number:**
84-0858166
**Tax Year Ended:**
DECEMBER 31, 1983
**Date FPAA Mailed to Tax Matters Partner:**
APRIL 15, 1987
**Person to Contact:**
Ella Cady
**Contact Telephone Number:**
(801) 625-7314

**NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT**

We have determined that there are adjustments to the partnership return as shown on the attached schedule of adjustments, Form 870-P, Settlement Agreement for Partnership Adjustments. This letter is the notice of Final Partnership Administrative Adjustment (FPAA).

If you want to enter into a binding settlement to treat partnership items consistently with the treatment of the items on the partnership return as modified by the FPAA, sign and return the enclosed Form 870-P. If the Commissioner accepts your offer of settlement, the treatment of partnership items under the settlement will be binding and will not be affected by any later judicial determination.

If you are the tax matters partner (the partnership representative who deals with IRS) and want to contest these adjustments in court, you have 90 days from the date this letter was mailed to file a petition for a readjustment of the partnership items with the United States Tax Court, the United States Claims Court, or the District Court of the United States for the district in which the partnership's principal place of business is located. During this 90-day period, no other partner may file a petition for judicial review, and the filing of a petition by the tax matters partner precludes all other actions.

If the tax matters partner has not filed a petition by the 90th day from the date the FPAA was mailed, any other partner entitled to receive this notice under section 6223 of the Internal Revenue Code (or any group of partners who together have an interest of 5 percent or more in the profits of the partnership (5-percent group)) may petition one of these courts after the 90th day, but on or before the 150th day, from the date the FPAA was mailed to the tax matters partner. Only one petition to the court is allowed. If more than one petition is filed, the first petition filed in the Tax Court will go forward. All other petitions (even those filed earlier) will be dismissed. If no petition is filed in the Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

(over)

Petitions filed with the United States Tax Court must be mailed to 400 Second Street, N.W., Washington, D.C. 20717. Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife, and both want to petition the Tax Court, both must sign the petition or each must file a separate, signed petition.

As a condition to filing a petition in either the appropriate District Court or the Claims Court, the partner filing the petition (including each member of a 5-percent group which files a petition) must deposit with the Internal Revenue Service, on or before the day the petition is filed, the amount by which the partner's tax liability would be increased if the treatment of partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro-rata share of the partnership's adjustments into account in refiguring your tax.

If no readjustment petition is filed in any of the courts listed on the front of this letter, this FPAA becomes binding and you will be billed for any additional tax that you may owe under the FPAA. You will not be permitted to contest the treatment of partnership items under the FPAA in any refund claim or suit.

The law permits us to bill you after 150 days from the mailing date of the FPAA to the tax matters partner. However, if a petition is filed in the Tax Court, you will not be billed until the Tax Court decision is final.

If you have any questions about this matter, please write to the person whose name and address are shown on this letter. If you write, attach this letter to help identify your account. Keep the copy for your records. Also include your telephone number and the most convenient time for us to call you in case we need more information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter. If the number is outside your local calling area, there will be a long-distance charge to you.

You may call the IRS telephone number listed in your local directory. An IRS employee there may be able to help you, but the contact person at the address shown on this letter is most familiar with your case.

Thank you for your cooperation.

Sincerely yours,

Lawrence B. Gibbs
Commissioner
by Roger Steele

Enclosures:
Form 870-P
Copy of this letter

EXPLANATION of ADJUSTMENTS
Crowne Oil Technology Partners
Partnership Year Ended December 31, 1983

1. It is determined that the deductions, reported by Crowne Oil Technology Partners ( a TEFRA Partnership) on its 1983 partnership income tax return in the amount of $7,580,535.00 are disallowed for the following reasons:

   (a) It has not been established that the underlying events, transactions and expenditures occurred in fact or in substance;

   (b) It has not been established that the claimed deductions originated in a trade or business or in a transaction entered into for profit;

   (c) It has not been established that the claimed deductions do not materially distort income;

   (d) It has not been established that the stated prices of the technology license and the various extraction rights do not exceed the actual cost to the partnership for those items. Thus, the deductions based thereon are disallowed since it has not been established that they have economic reality;

   (e) It has not been established that the notes executed by the partners in favor of the partnership are recourse, are not contingent, are not speculative and have economic substance.

   Furthermore, the claimed deductions are not allowed because it has not been established that they were derived for expenditures which:

   (a) Were incurred after the commencement of a business activity;

   (b) Qualify as ordinary and necessary business expenses of the partnership or expenses incurred by the partnership for the production of income;

   (c) Were properly accrued by the partnership;

   (d) Were incurred by the partnership in connection with the purpose designated by the partnership; and

   (e) Were not capital in nature.

   In addition, it has not been shown:

   (a) That the entity from which the partnership purportedly licensed a technology portfolio had any rights to such property which could be licensed;

EXPLANATION of ADJUSTMENTS
Crowne Oil Technology Partners
Partnership Year Ended December 31, 1983

(b) What the fair market value of the purported technology license is, and that the purported price of the license to the partnership, did not unreasonably exceed the fair market value of such license;

(c) What the fair market value of the extraction rights incurred is, and that the purported price of such extraction rights to the partnership, did not unreasonably exceed the fair market value of such rights.

In addition, it has not been established that license fees claimed by the partnership qualify as research and experimental expenditures under Internal Revenue Code Section 174.

Additionally, the deductions are not allowable because they have not been adequately substantiated as to amount or the nature of the deduction.

Furthermore, it has not been established that the partners were at risk within the meaning of Internal Revenue Code Section 465 for any amounts in excess of those actually paid in cash to the partnership. Thus, it has not been established that the partnership losses are not in excess of the partners' adjusted basis.

EXPLANATION of ADJUSTMENTS
Crowne Oil Technology Partners
Partnership Year Ended December 31, 1983

2. It is determined that your ordinary income from partnerships and fiduciaries is $127,787.00 instead of the amount reported of $101,888.00 because it has not been established that you incurred deductible losses for the year 1983 from the Utah Heavy Oil Project JV or the Caustic Hills JV in which you claim to own interests. It has not been established, that if the partnership did have losses for the taxable year, that any portion of those losses would be properly allocated to you. In addition, it has not been established that you have sufficient basis in the partnerships to claim the losses or that you were at risk within the meaning of Internal Revenue Code Section 465 with respect to any amounts. Accordingly, it is determined that your partnership income is $127,787.00 instead of the amount reported of $101,888.00.

3. With respect to distributive share items it has been determined for the reasons stated above in explanation 1 that:

   (a) net investment income (loss) for tax preference items is -0-;

   (b) depletion is -0-;

   (c) net earnings from self-employment is -0- as recomputed without regard to any distributive share of income or loss;

   (d) basis of new and used recovery property eligible for investment tax credit is -0-;

   (e) net long term capital gain is $7,360.00 as reported.

With respect to the distributive share item, basis of new and used recovery property eligible for investment tax credit, in addition to the explanation in 1 and 3 above, it was determined that the distributive share amounts are -0- because it has not been established:

   (a) that the property was investment credit property as defined in section 48 of the Internal Revenue Code;

   (b) that the taxpayer has a basis in such property.

EXPLANATION of ADJUSTMENTS
Crowne Oil Technology Partners
Partnership Year Ended December 31, 1983

This Final Partnership Administrative Adjustment for the tax year ended December 31, 1983 does not reflect possible adjustments to any other TEFRA partnerships in which you may have been a partner in 1983. You will be informed of any adjustments to your 1983 returns after completion of any other TEFRA partnership examination.

Form 4605-A

Department of the Treasury—Internal Revenue Service

# Examination Changes - Partnerships, Fiduciaries, Small Business Corporations, and Domestic International Sales Corporations

| Name and Address | Employer Identification Number | Form Number |
|---|---|---|
| CROWNE Oil TECHNOLOGY PARTNERS<br>1860 LINCOLN STREET SUITE 1230<br>DENVER, COLORADO 80295 | 84-0858166 | 1065 |
| | Person Examination Changes Were Discussed With | Name:<br>Title: |

| 1. Adjustments to ordinary, distributable net, or taxable income. | Year: 1983 | Year: | Year: |
|---|---|---|---|
| a. Deductions | $7,580,535.00 | | |
| b. Partnership Losses | 25,899.00 | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| | | | |
| 2. Total adjustments to ordinary, distributable net, or taxable income. | 7,606,434.00 | | |
| 3. Ordinary, distributable net, or taxable income as reported. | (6,428,164.00) | | |
| 4. Corrected ordinary, distributable net, or taxable income. | $1,178,270.00 | | |
| 5. Other adjustments. | | | |
| a. | | | |
| (1) Adjustment | | | |
| (2) As reported | | | |
| (3) Corrected | | | |
| b. | | | |
| (1) Adjustment | | | |
| (2) As reported | | | |
| (3) Corrected | | | |

Remarks

| Examiner's Signature | District Office | Date |
|---|---|---|
| David Hamilton | Ogden Service Center | 4-15-87 |

UNITED STATES TAX COURT

FILED JUN 30 1988

UNITED STATES TAX COURT

U.S. TAX COURT MAILROOM 10 88 JUN 30 AM 10:48

| | |
|---|---|
| VULCAN OIL TECHNOLOGY PARTNERS; VANGUARD OIL TECHNOLOGY PARTNERS; DRAKE OIL TECHNOLOGY PARTNERS; DILLON OIL TECHNOLOGY PARTNERS; DERRINGER OIL TECHNOLOGY PARTNERS 1981; DERRINGER OIL TECHNOLOGY PARTNERS 1982; CROWNE OIL TECHNOLOGY PARTNERS; and CARLTON OIL TECHNOLOGY PARTNERS, LTD., American Energy Resources, Inc. Tax Matters Partner, Petitioners, | DOCKET NO. 16768-88 |
| vs. | PETITION FOR RE-ADJUSTMENT OF F.P.A.A.s FOR 1984 AND 1985 (ELEKTRA/HEMISPHERE ASSIGNED TO JUDGE STEPHEN SWIFT) |
| COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent. | |

MAIL CLERK RQ
ADMISSIONS
RECORDED & SERVED
PUB. FILES

**PETITION**

The Petitioners hereby Petition for a readjustment of the Partnership items and a redetermination of the deficiencies set forth by the Commissioner of Internal Revenue in the Final Partnership Administrative Adjustments, copies of which are attached hereto, and as the basis of their case allege as follows:

1. The Petitioners are:

| NAME AND ADDRESS | TAXPAYER IDENTIFYING NUMBER | PLACE FILED |
|---|---|---|
| VULCAN OIL TECHNOLOGY PARTNERS c/o American Energy Resources, Inc., T.M.P. 109 N. Mid-America Mall Memphis, TN 38103 | 84-0858746 | Ogden, Utah |
| VANGUARD OIL TECHNOLOGY PARTNERS c/o American Energy Resources, Inc., T.M.P. 109 N. Mid-America Mall Memphis, TN 38103 | 84-0858201 | Ogden, Utah |

SERVED JUL 11 1988

PLAINTIFF'S EXHIBIT 3

| | | |
|---|---|---|
| DRAKE OIL TECHNOLOGY PARTNERS c/o American Energy Resources, Inc., T.M.P. 109 N. Mid-America Mall Memphis, TN 38103 | 84-0856853 | Ogden, Utah |
| DILLON OIL TECHNOLOGY PARTNERS c/o American Energy Resources, Inc., T.M.P. 109 N. Mid-America Mall Memphis, TN 38103 | 84-0862763 | Ogden, Utah |
| DERRINGER OIL TECHNOLOGY PARTNERS - 1981 c/o American Energy Resources, Inc., T.M.P. 109 N. Mid-America Mall Memphis, TN 38103 | 84-0862764 | Ogden, Utah |
| DERRINGER OIL TECHNOLOGY PARTNERS - 1982 c/o American Energy Resources, Inc., T.M.P. 109 N. Mid-America Mall Memphis, TN 38103 | 84-0891521 | Ogden, Utah |
| CROWNE OIL TECHNOLOGY PARTNERS c/o American Energy Resources, Inc., T.M.P. 109 N. Mid-America Mall Memphis, TN 38102 | 84-0858166 | Ogden, Utah |
| CARLTON OIL TECHNOLOGY PARTNERS, LTD. c/o American Energy Resources, Inc., T.M.P. 109 N. Mid-America Mall Memphis, TN 38102 | 84-0928771 | Ogden, Utah |

2. The Notices of Final Partnership Administrative Adjustments and the Notices of Deficiency were mailed as follows:

| NAME | DATE MAILED | FROM |
|---|---|---|
| VULCAN OIL TECHNOLOGY PARTNERS | April 11, 1988 | Denver, Colorado |
| VANGUARD OIL TECHNOLOGY PARTNERS | April 11, 1988 | Denver, Colorado |

| | | |
|---|---|---|
| DRAKE OIL TECHNOLOGY PARTNERS | April 14, 1988 | Denver, Colorado |
| DILLON OIL TECHNOLOGY PARTNERS | April 11, 1988 | Denver, Colorado |
| DERRINGER OIL TECHNOLOGY PARTNERS - 1981 | April 11, 1988 | Denver, Colorado |
| DERRINGER OIL TECHNOLOGY PARTNERS - 1982 | March 28, 1988 | Denver, Colorado |
| CROWNE OIL TECHNOLOGY PARTNERS | April 12, 1988 | Ogden, Utah |
| CARLTON OIL TECHNOLOGY PARTNERS, LTD. | April 5, 1988 | Denver, Colorado |

3. The Final Partnership Administrative Adjustments by the Commissioner are:

| Partnership/ Petitioner | Tax Year | Administrative Adjustment | Amount in Dispute | Penalty |
|---|---|---|---|---|
| VULCAN OIL | 12/31/84<br>12/31/85 | $ 7,004,213<br>$ 2,177,081 | $ 7,004,213<br>$ 2,177,081 | * |
| VANGUARD OIL | 12/31/84<br>12/31/85 | $ 4,259,634<br>$ 1,327,335 | $ 4,259,634<br>$ 1,327,335 | * |
| DRAKE OIL | 12/31/84<br>12/31/85 | $24,056,780<br>$ 7,430,939 | $24,056,780<br>$ 7,430,939 | * |
| DILLON OIL | 12/31/84<br>12/31/85 | $24,089,507<br>$ 6,242,885 | $24,089,507<br>$ 6,242,885 | * |
| DERRINGER OIL-1981 | 12/31/84<br>12/31/85 | $ 3,009,528<br>$ 1,337,376 | $ 3,009,528<br>$ 1,337,376 | * |
| DERRINGER OIL-1982 | 12/31/84<br>12/31/85 | $ 1,137,289<br>$ 1,032,006 | $ 1,137,289<br>$ 1,032,006 | * |
| CROWNE | 12/31/84 | $ 7,855,813 | $ 7,855,813 | * |
| CARLTON | 12/31/84 | $ 1,156,815 | $ 1,156,815 | * |

*Penalties: To be determined under I.R.C. Sections 6621 (Tax Motivated Transactions); 6659 (over-valuation); and 6661 (substantial underpayment).

4. The determination of taxes set forth in said Final Partnership Administrative Adjustment is based on the following errors for each joint petitioner, each involving common issues of fact and of law:

(As to the Petitioner Partnerships)

A. It is error to make adjustment for 1984 and 1985 to ordinary income as reported and to distributive share items as corrected on the F.P.A.A. attached hereto, including adjustments to ordinary income; deductions; Partnership losses; and loss on investment loans; self employment (5a); geothermal income, (5b); geothermal well deductions, (5c); qualified investment income, (5d); qualified investment expenses, (5e); basis of new recovery property, (5f); basis of new recovery property over 3 years, (5g); basis of used recovery property, (5h); oil and gas cost depletion, (5i); oil and gas depletion to extent of basis, (5j); untangible drilling costs, (5k); investment income, (5l); and ordinary income and loss, (5m). The F.P.A.A. and details of explanations for each Partnership petitioner are attached as Exhibit A and incorporated herein by reference.

B. It is error to determine that deductions reported by the Partnerships for 1984 and 1985, as set forth on Exhibit A to the F.P.A.A. should be disallowed on the basis that:

(1) that the underlying events, transactions, and expenditures are not established or did not occur in fact or in substance.

(2) that the claimed deductions did not arise out of a trade or business or in a transaction entered into for profit,

(3) that the claimed deductions distort income,

(4) that the prices of technology licenses and extraction rights lack economic reality or their deduction amounts exceed the cost to the Partnership, or

(5) that the notes executed by the Partnerships, or by the partners to the Partnership, are not recourse, are contingent, speculative and lack economic substance.

C. It is error to allege that deductions should not be allowed on the grounds as follows:

(1) they were incurred before the commencement of a business activity; or

(2) they do not qualify as ordinary and necessary or are not related to the production of income, or,

(3) they were not properly accrued, or

(4) they were not a proper purpose of the Partnership, or

(5) they were capital in nature.

D. It is error to allege that;

(1) that the licensor had no rights to license the technology portfolio, and,

(2) that the price paid by Partnerships exceeded fair market value of the portfolio licensed, and,

(3) that the price paid for the extraction rights to the Parker Field exceeded the fair market value thereof.

E. It is error to allege that the license fees paid by the Partnerships for tax year ended 1984 did not qualify for research and experimental expenditures under I.R.C. Section 174.

F. It is error to allege that the claimed deductions are not substantiated.

G. It is error to allege that documents were not produced as requested.

H. It is error to allege that partners were not at risk within the meaning of I.R.C. Section 465 and that deductions were therefore made in excess of partner's adjusted basis.

I. It is error to allege that the Partnership and fiduciaries item on Exhibit B (for Utah Heavy Oil Project J.V.) should be adjusted on the ground that Partnerships do not own any interest in said project in 1984.

J. It is error to allege that the Partnership and fiduciaries return item on Exhibit C (Castaic Hills and Utah Heavy Oil Project J.V.) should be adjusted on the ground that Partnerships did not own any interest therein during 1985.

K. It is error to allege that the Utah Heavy Oil Project J.V. and O.T.G./Castaic Hills Project had no losses and that any losses could not be apportioned to the Partnership, and/or, that basis was not sufficient, and/or, that partners were not at risk in this activity.

L. it is error to allege that losses on loans should be disallowed on the grounds that:

(1) they are not bona fide losses, and,

(2) that they exceed basis, and,

(3) that the timing of the accrual was wrong.

M. That it is error to readjust the distributive share items as recited in par. 4-A above.

N. That it is error to impose penalties as recited in that the partners and the management of the partnership were not negligent in any particular and have not had any material disregard for the tax laws.

O. That affirmative defense is asserted, in the event of a deficiency, in that the innocent spouse of the investing partner, herein referred to as the wife, was not a participant, did not gain from the activity and had no knowledge of the underlying facts.

P. That affirmative defense is asserted that the Respondent should be subject to sanctions for making wrongful and scandalous allegations, under the rules. The remedy requested for this knowing bad faith is dismissal of its F.P.A.A. in total. For example, paragraph 1 of the F.P.A.A. blighthly alleges that there was no response to a request to provide documents and that is tantamount to an obstruction of justice and a contempt of Court. It is also wrong. The Respondent has every document known to exist in this matter and has recently admitted there are no outstanding discovery requests. This and other allegations are clearly scandalous under the circumstances.

5. That the grounds for the income, losses, deductions and distributive share items reported by the Partnerships is as follows for 1984 and 1985.

A. That these Partnerships commenced business in years prior to 1984 and engaged in substantially economic activity in conformance with the Partnership agreements.

B. That the thrust of the business involved research and development of oil and gas technologies with very high future income potential to the Partnerships form use of resulting commercial applications on hundreds of oil and gas wells operated by the Partnerships, or jointly operated by them through O.T.G. by agreement. That oil and gas wells and various heavy oil joint

ventures were selected particularly because of their potential profitability after applications of Enhanced Oil Recovery methods and other (such as heavy oil) technologies then being funded for research.

C. That the researched technologies were reasonable and well calculated to lead to commercially profitable results and the effort was bone fide and substantial. The value of the research, combined with the then known value of the technologies, was in excess of the prices paid for the rights, including the license fees. The fees were ordinary and necessary to the business of developing Enhanced Oil Recovery methods to the State of the Art and beyond. The portfolio funded included unique and proprietorship technologies and the risk of failure was on the Partnerships: The trade and business of the Partnerships was hand in glove with the research attempted. The prices paid were economically reasonable in light of the profits reasonably projected upon success. The losses were reported as incurred under I.R.C. Section 174 or 162 and no petitioner received any permission of the Commissioner to not deduct its losses in the year incurred under 174(c). Nor could these expenses be capital in nature because they were fees paid to another party with no capital or proprietorship right being purchased.

D. That the price paid for the Parker field extraction rights was not unreasonable. However, the Partnerships traded for other oil wells, including the Illinois Basin, in a reasoned belief that they could enhance their E.O.R. potential profits by doing so at that time. In fact, E.O.R. experiments were carried on during 1983 and 1984 on Partnership properties, albeit with non-commercial results. The economics of oil and gas for E.O.R. generally has been depressed. However, these Petitioner Partnerships are perfectly positioned now to enjoy maximum advantage when (and if) the economics of oil and gas improve. Their ongoing project is stalled but is not lost or stopped.

E. That the partners each guaranteed debt of the Partnership to a third party in conformance with the provisions of I.R.C. Section 465 and each partner should be deemed at risk in every legal sense and no deductions were reported or claimed that were in excess of basis. The subscription agreements of each partner clearly recite a direct and legally binding assumption of debt of the Partnership for each year, making reference to a Partnership note which was made and delivered per contract. That the holder of the guaranteed not is not related to the Partnership and has no capital nor net profits interest in it.

F. That the Utah Heavy Oil Joint Venture was a bone fide and reasonable project to include in the program, having research and development characteristics and a very high profit potential. The Partnership still holds title to Utah leases and its ongoing activity may lead to profitable results there. Castaic Hills has been traded, however, for more appealing properties that have current income. The fiduciary return items reasonably reflect the income, losses and expenses associated with these endeavors. By legal agreements, these partnerships did own rights therein in 1984 and 1985, the apportionments were proper, and the partners were at risk for amounts in excess of deductions.

G. That the loans written down by the Partnerships reflected losses in the years determined in accordance with generally accepted accounting principles.

H. That the distributive share of income, losses and deductions were properly calculated on the basis of the business and research deduction booked by the entities and were a direct consequence of their actual operations each year.

I. That this joint petition is appropriate because there common issues of law and fact.

Wherefore, Petitioners pray for a readjustment as follows:

(1) that the I.R.S. form 1065 for each partnership for 1984 and 1985 be accepted as filed.

(2) that the fiduciary returns incorporated therein be accepted as filed.

(3) that no penalties be assessed.

(4) that the Respondent be subject to sanctions, including dismissal of the F.P.A.A.

(5) for such other and further relief as may be deemed appropriate by this Court.

Respectfully submitted,

ADMITTED U.S. TAX COURT

[signature] OD0102

DECLAN J. O'DONNELL #4412
Attorney for Tax Matters
Partner of Each Petitioner
6841 South Yosemite
Englewood, Colorado 80112
(303) 721-1177

Internal Revenue Service
District Director

Department of the Treasury

Date: 11 APR 1988

Name of Partnership:
Dillon Oil Technology Partners - 82
Taxpayer Identifying Number:
84-0862763
Tax Year Ended:
December 31, 1984 and December 31, 1
Date FPAA Mailed to Tax Matters Partner:
11 APR 1988
Person to Contact:
Notice Clerk
Contact Telephone Number:
(303) 844-5934

American Energy Resources, Inc., TMP
Dillon Oil Technology Partners - 82
The Claridge House
109 N. Mid-America Mall
Memphis, TN 38103

## NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

We have determined that there are adjustments to the partnership return as shown on the attached schedule of adjustments, Form 870-P, Settlement Agreement for Partnership Adjustments. This letter is the notice of Final Partnership Administrative Adjustment (FPAA).

If you want to enter into a binding settlement to treat partnership items consistently with the treatment of the items on the partnership return as modified by the FPAA, sign and return the enclosed Form 870-P. If the Commissioner accepts your offer of settlement, the treatment of partnership items under the settlement will be binding and will not be affected by any later judicial determination.

If you are the tax matters partner (the partnership representative who deals with IRS) and want to contest these adjustments in court, you have 90 days from the date this letter was mailed to file a petition for a readjustment of the partnership items with the United States Tax Court, the United States Claims Court, or the District Court of the United States for the district in which the partnership's principal place of business is located. During this 90-day period, no other partner may file a petition for judicial review and the filing of a petition by the tax matters partner precludes all other actions.

If the tax matters partner has NOT filed a petition by the 90th day from the date the FPAA was mailed, any other partner entitled to receive this notice under section 6223 of the Internal Revenue Code (or any group of partners who together have an interest of 5 percent or more in the profits of the partnership (5-percent group)) may petition one of these courts after the 90th day, but on or before the 150th day, from the date the FPAA was mailed to the tax matters partner. Only one petition to the court is allowed. If more than one petition is filed, the first petition filed in the Tax Court will go forward. All other petitions (even those filed earlier) will be dismissed. If no petition is filed in the Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to 400 Second Street, N.W., Washington, D.C. 20217. Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife, and both want to petition the Tax Court, both must sign the petition or each must file a separate, signed petition.

(over)

Department of the Treasury – Internal Revenue Service

# SETTLEMENT AGREEMENT FOR PARTNERSHIP ADJUSTMENTS

## SCHEDULE OF ADJUSTMENTS

| ME OF PARTNERSHIP<br>illon Oil Technology Partners - 1982<br>XPAYER IDENTIFYING NUMBER 84-0862763 | TAX YEAR ENDED December 31, 1984 | TAX YEAR ENDED December 31, 1985 | |
|---|---|---|---|
| TAIL OF ADJUSTMENTS | | | |
| Ordinary Income: | | | |
| 1. Deductions | 23,643,396 | 5,872,439 | |
| 2. Partnership Losses | 446,111 | 229,549 | |
| 3. Loss on Investment | - | 140,897 | |
| stributive Share Items (Other Adjustments): | | | |
| TOTAL ADJUSTMENTS | $24,089,507 | $6,242,885 | |

a. Net Earnings (Loss) from Self-Employment:

| | 1984 | 1985 |
|---|---|---|
| Reported | $( 21,039.00) | $ 67,801.00 |
| Corrected | 97,933.00 | 97,933.00 |
| Adjustment | $ 118,972.00 | $ 30,132.00 |

b. Gross Income From Oil, Gas and Geothermal Properties - Tax Preference Item

| | 1984 | 1985 |
|---|---|---|
| Reported | $ 1,115,744.00 | $1,113,815.00 |
| Corrected | .00 | .00 |
| Adjustment | $ 1,115,744.00 | $1,113,815.00 |

c. Deductions Allocable to Oil, Gas and Geothermal Properties-Tax Preference Items

| | 1984 | 1985 |
|---|---|---|
| Reported | $ 1,266,691.00 | $1,137,599.00 |
| Corrected | .00 | .00 |
| Adjustment | $ 1,266,691.00 | $1,137,599.00 |

d. Qualified Investment Income - Tax Preference Item

| | 1984 | 1985 |
|---|---|---|
| Reported | $ 4,771,845.00 | $4,368,954.00 |
| Corrected | .00 | .00 |
| Adjustment | $ 4,771,845.00 | $4,368,954.00 |

Distributive Share Items (Other Adjustments) Continued on Next Page.

0059

SETTLEMENT AGREEMENT FOR PARTNERSHIP ADJUSTMENTS
(CONTINUED) DETAIL OF ADJUSTMENTS FOR
DILLON OIL TECHNOLOGY PARTNERS-1982 84-0862763

e. Qualified Investment Expense - Tax Preference Item

| | 1984 | 1985 |
|---|---|---|
| Reported | $23,556,400 | $ 5,966,045 |
| Corrected | 0 | 0 |
| Adjustment | $23,556,400 | $ 5,966,045 |

f. Unadjusted Basis of New 3 Year Recovery Property Eligible for Investment Tax Credit - (Before Reduction for IRC 48(q) and Applicable Percentage)

| | 1984 |
|---|---|
| Reported | $ 8,246 |
| Corrected | 0 |
| Adjustment | $ 8,246 |

g. Unadjusted Basis of New (Other) Recovery Property Eligible for Investment Tax Credit - (Before Reduction for IRC 48(q) and Applicable Percentage)

| | 1984 | 1985 |
|---|---|---|
| Reported | $ 90,863 | $ 294,423 |
| Corrected | 0 | 0 |
| Adjustment | $ 90,863 | $ 294,423 |

h. Unadjusted Basis of Used (Other) Recovery Property Eligible for Investment Tax Credit - (Before Reduction for IRC 48(q) and Applicable Percentage)

| | 1985 |
|---|---|
| Reported | $ 20,155 |
| Corrected | 0 |
| Adjustment | $ 20,155 |

i. Oil and Gas Depletion To the Extent of Basis

| | 1984 | 1985 |
|---|---|---|
| Reported | $ 164,277 | $ 237,837 |
| Corrected | 0 | 0 |
| Adjustment | $ 164,277 | $ 237,837 |

j. Cost Depletion Oil and Gas

| | 1984 | 1985 |
|---|---|---|
| Reported | $ 164,277 | $ 237,837 |
| Corrected | 0 | 0 |
| Adjustment | $ 164,277 | $ 237,837 |

k. Intangible Drilling Costs

| | 1984 | 1985 |
|---|---|---|
| Reported | $ 35,818 | $ 10,813 |
| Corrected | 0 | 0 |
| Adjustment | $ 35,818 | $ 18,813 |